Midland Borough, Appellant, *v.* Steubenville, etc., Traction Co. et al.

Argued March 24, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Richard S. Holt,* for appellant.—We maintain that the facts alleged in the bill and the amendments thereto constitute a continuing public nuisance in and upon Midland Avenue: South Side Electric Mfg. Co. v. Light Co., 38 P. L. J. 38; Pittsburgh v. Carpenter Co., 194 Pa. 318; Breisch v. Coal Co., 267 Pa. 546; Mint Realty Co.

v. Wanamaker, 231 Pa. 277; Pittsburgh v. R. R., 263 Pa. 294.

The court had jurisdiction: Bethlehem City Water Co. v. Boro., 253 Pa. 333; Pittsburgh Rys. Co. v. Pittsburgh, 260 Pa. 424; Heights Water Co. v. Lebanon, 46 Pa. C. C. R. 561; Bethlehem v. Allentown, 275 Pa. 110; Citizens Elec. Illuminating Co. v. R. R., 255 Pa. 176.

*Harold F. Reed,* with him *Joseph Knox Stone,* for appellee.—The matters in controversy are all within the jurisdiction of the public service commission: Fogelsville, etc., Elec. Co. v. Power & Light Co., 271 Pa. 237; York Water Co. v. York, 250 Pa. 115; St. Clair Boro. v. Ry., 259 Pa. 462.

The Ohio Power Co. is an indispensable party to the record in this case: Hartley v. Langkamp & Elder, 243 Pa. 550, 555; Fogelsville & Trexlertown Elec. Co. v. Power & Light Co., 271 Pa. 237.

*Thompson Bradshaw,* of *May & Bradshaw,* for Duquesne Light Company, intervening defendant.—Plaintiff did not bring into court indispensable parties to the action: Hartley v. Langkamp, 243 Pa. 550; Geesey v. York, 254 Pa. 397.

Jurisdiction is in the public service commission to determine whether the operation complained of is a menace to the public and hence a nuisance in fact: St. Clair Boro. v. Ry., 259 Pa. 462; York Water Co. v. York, 250 Pa. 115; Jitney Bus Assn. v. Wilkes-Barre, 256 Pa. 462; Easton v. Miller, 265 Pa. 25.

All matters within the jurisdiction of the commission must first be determined by the commission in every instance before the courts will adjudge any phase of the controversy: Fogelsville & Trexlertown Elec. Co. v. Power & Light Co., 271 Pa. 237; St. Clair Boro. v. Ry., 259 Pa. 462.

The common pleas does not have jurisdiction on the ground that the operation is unlawful because carried

on by a foreign corporation not registered to do business in Pennsylvania: Croyle v. Water Co., 259 Pa. 484; Minersville Boro. v. Ry. Co., 205 Pa. 402.

A traction company having consent to occupy a street has power to lease its poles to an electric power company for the stringing of wires by virtue of the Act of March 19, 1903, P. L. 304, regardless of the fact that the power company has no consent to occupy that particular street: Houston Boro. v. Ry., 234 Pa. 245; Harmony Electric Co. v. Pub. Serv. Com., 78 Pa. Superior Ct. 271.

OPINION BY MR. JUSTICE SADLER, April 14, 1930:

The Borough of Midland granted consent to the street railway company, defendant, formed in part by merger, on November 12, 1917, with a like corporation doing business in the State of Ohio, and physically connected therewith, to occupy certain streets with its tracks, poles and wires. The original grant was made on January 16, 1907, under the provisions of the Act of May 14, 1889 (P. L. 211), to the constituent Pennsylvania line, which had the state border as its terminus. By ordinance of January 14, 1913, the right to use additional highways was given; thereafter Midland Avenue has been occupied with a double track. Posts, poles and wires were likewise constructed to carry the necessary electric current, requisite for the operation of the passenger cars passing over the highway. Later, the Ohio Power Company, also a party defendant in the present proceeding, was organized in the adjoining state, and carried its current, by high tension lines attached to the poles of the railway company, through the borough to a substation at the eastern side, erected by the Duquesne Light Company, and electricity passes over these wires to and from the two power companies, as their needs require. The bill is silent as to the corporate home of the Duquesne corporation, though its operation within Pennsylvania is averred. By its petition to intervene it appears to have been chartered in this State; but, as this fact

is not set forth in the complaint, we must disregard, for present purposes, the statement to this effect appearing in the pleadings filed by it. We are now dealing solely with an answer raising preliminary objections to the bill, asking that it be dismissed for want of proper parties and lack of averments showing a cause of action, it being insisted that the question raised is not cognizable in equity. The essentials of the defense appearing in the petition of the Duquesne Light Company to intervene and its motion to dismiss, in so far as not responsive to facts set forth in the bill, cannot now be considered. The Equity Rules (No. 48) make this impossible, since the new allegations require production of evidence to sustain them: Cf. Rutherford Water Co. v. Harrisburg, 297 Pa. 33.

In passing upon the question raised we are therefore confined to the statements appearing in the bill, and the determination as to whether they are sufficient to sustain a decree for the relief asked. It is set forth therein that the power lines are stretched on the poles of the railway, without municipal consent, for the benefit of a foreign corporation, thus constituting a public nuisance, which the equity court is asked to abate by directing their removal, and to declare the erection thereof and transmitting current thereon by an Ohio company ultra vires. It is to be noticed that the prayer does not contemplate the maintenance of the status quo, until the rights of the respective parties are legally determined, but asks for a mandatory injunction to compel immediate destruction of the lines complained of. It is charged that the current passes to and from the Duquesne Light Company, and is shifted from one corporation to the other as necessity may require. In view of this allegation, the last named company was permitted to intervene as a party defendant, and has joined with the railway in asking a dismissal of the bill. Thereafter, amendments were filed by the plaintiff, amplifying the charges already set forth. Permission to serve the Ohio

Power Company was given, but no attempt to actually do so has been made, though many months have elapsed since the motion to dismiss was presented.

It is clear that the traction company and both the power companies, alleged to be wrongfully using the streets to convey electric current, are not only proper but indispensable parties to the bill, if the mandatory injunction is to be granted. Two have appeared, but the third has not been served, and no real attempt to bring it in has been made. It is well settled that equity will not grant relief, such as here asked, if all immediately affected thereby are not made parties. The Ohio Power Company was named as defendant, but it has not been compelled to appear. The Duquesne Light Company, necessarily interfered with in its operations if the order prayed for is made, was not joined, but, with leave, intervened, and also demands the dismissal of the proceeding. Equity Rule 48 provides that a complaint may be summarily stricken off for want of proper parties, and this has been uniformly held (Geesey v. York, 254 Pa. 397), though an amendment may be permitted in a proper case to join one affected but not brought on the record: Hartley v. Langkamp & Elder, 243 Pa. 550. No real effort has been made to force the appearance of the Ohio Power Company, a necessary party, and for this reason the complaint should be dismissed, for no attempt to serve it has been made though a long period of time has elapsed. Possibly this would not be ordered until a further opportunity was given to make it more than a defendant in name, if other reasons making the decree entered imperative were not apparent.

It is urged that the bill sufficiently shows the commission of such a public nuisance by the traction company, in permitting an unauthorized use of its poles, as to justify the order asked for, and, further, that the Ohio Power Company has no corporate rights to act within this State. The unlawful occupation of a highway is undoubtedly a restrainable nuisance (Breisch v. Locust

Mt. Coal Co., 267 Pa. 546; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Mint Realty Co. v. Wanamaker, 231 Pa. 277), but it must be kept in mind that the Act of March 19, 1903, P. L. 34, gave to companies, having the right to use them, the power to lease their poles, erected on streets permissibly occupied, to other corporations for the purpose of carrying wires, though the latter had no express municipal consent: Houston Boro. v. W. C. Ry. Co., 234 Pa. 245. This legislation would protect the intervening defendant, the Duquesne Light Company, in building its line on the poles of the railway company with its leave, though possibly not a defense to the Ohio Power Company, if the latter had no authority to do business in Pennsylvania: Citizens E. I. Co. v. L. & W. V. R. R. Co., 255 Pa. 176. But if, as the bill avers, the traction company is doing something ultra vires, this question must be determined by quo warranto proceedings at the suit of the attorney general: Croyle v. Johnstown Water Co., 259 Pa. 484; Minersville Boro. v. Schuylkill El. Ry. Co. (No. 2), 205 Pa. 402.

Though the considerations mentioned may not have justified the dismissal but compelled amendment of the bill, yet another and sufficient reason for entering the decree here complained of is that upon which the decision of the court below was founded. It held that the entire controversy was one requiring action by the public service commission, with the right to appeal from any order it might make, and, in such case, an equity court will not assume jurisdiction to settle the dispute. It is true that in controversies of the character now presented the bill has at times been retained to secure the maintenance of the status quo, pending action of the body designated to pass on the questions raised (Fogelsville & Trexlertown El. Co. v. Penna. P. & L. Co., 271 Pa. 237; Bethlehem v. Allentown, 275 Pa. 110), yet no such request was here made. On the contrary, a mandatory injunction to remove the wires was prayed for. It is not suggested that any change in the present situa-

tion is contemplated, and an order directing further action until the tribunal to pass upon matters such as here involved has acted, is unnecessary. The real question for consideration is whether the public service commission is the proper and sole tribunal to pass upon the rights of plaintiffs.

The Public Service Company Law (July 26, 1913, P. L. 1374,) provides for a commission with extensive powers in the regulation of service corporations. It is expressly given the right, in section one, to control the "interchange of facilities between two or more public service companies," and the term used is expressly declared to include "wires, poles and structures." Section two directs that it shall see that "safe" appliances are installed. Article V (sections 1 and 2) gives jurisdiction to make such orders as are necessary for the "safety" of the public, where electricity is passed over wires, and shall "regulate the service......of any and all public service companies,......the safety of the facilities, plant and equipment for the carrying on of their business......[and] the quantity of electricity or power supplied." Article VI (section 6) grants the municipality the right to complain if the situation in question is dangerous, and, from the final order, an appeal may be taken to the Superior Court. If the wires and current carried thereon constitute a danger to its citizens, the commission is empowered to grant the relief required.

It is true that article V, section 29, of the act provides: "Except as herein otherwise expressly provided, ......nothing in this act contained shall in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwealth, it being the intention that the provisions of this act shall be cumulative, and in addition to such rights of action and remedies." Where the question involved is a mere reasonable regulation of the conduct of the service company, equity has jurisdiction to

compel obedience to the rules established by the municipality: Jitney Bus Assn. v. Wilkes-Barre, 256 Pa. 462; Easton v. Miller, 265 Pa. 25. But, as was said by Mr. Justice ELKIN, in one of the earlier decisions, construing the Act of 1913 (York Water Co. v. York, 250 Pa. 115, 118), "The Public Service Company Law was intended to provide a complete system for the supervision and regulation of public service corporations, and the intention of the legislature to repeal or supply all former acts inconsistent therewith is clearly expressed in the language of the statute. ...... This [regulation of water meters] is a subject clearly within the powers of the public service commission, and hence we are confronted with the situation that both bodies are vested with the same powers or that one must give way to the other. There should be no difficulty in deciding which horn of the dilemma the legislature intended to be taken. There can be no reasonable doubt that the legislative intention was to make the Public Service Act the supreme law of the State in the regulation and supervision of public service corporations, and, this being so, it follows as a necessary sequence that all laws inconsistent with the powers thus conferred must be held to be repealed or supplied thereby."

Later, this court declared in St. Clair Boro. v. Tamaqua & Pottsville Elec. Ry. Co., 259 Pa. 462, 468: "Since the Public Service Company Law has been upon our books, we have consistently adhered to the rule that matters within the jurisdiction of the commission must first be determined by it, in every instance, before the courts will adjudge any phase of the controversy......; and it is plain that orderly procedure requires an adherence to this practice, otherwise different phases of the same case might be pending before the commission and the courts at one time, which would cause endless confusion." This thought was amplified in a later opinion, where the question is carefully considered by Mr.

Justice Kephart in Fogelsville & T. El. Co. v. Pa. P. & L. Co., supra, page 240.

In line with the authorities referred to, the commission has been held to have exclusive jurisdiction where rates are involved (St. Clair Boro. v. T. & P. El. Co., supra; City of Scranton v. Pub. Serv. Com., 268 Pa. 192), or regulations of service and the necessity therefor (Valley Rys. v. Harrisburg, 280 Pa. 385; New Brighton Boro. v. New Brighton Water Co., 247 Pa. 232; Bethlehem City Water Co. v. Bethlehem, 253 Pa. 333; Rochester B. & L. Assn. v. Beaver Valley Water Co., 68 Pa. Superior Ct. 122), and this is true, in so far as intrastate matters are concerned, though the corporation involved is engaged, as here, in interstate service by reason of connection with lines in adjoining states: Peoples Natural Gas Co. v. Pub. Serv. Com., 279 Pa. 252.

In the instant case, the complaint is based on the use of facilities actually within the State, alleged to jeopardize the safety of the citizens, constituting a public nuisance. It is clearly within the power of the commission to make such order, upon complaint by the Borough of Midland, as may be required to correct danger which exists, if any, and, as to this question, it is given jurisdiction preliminarily, with the right of the dissatisfied party to appeal. If the service complained of is ultra vires, relief may be granted, or the Commonwealth may secure the prohibition of an unlawful act by quo warranto proceedings. The equity court had no jurisdiction to decree the removal of the wires in the case at bar. No averment makes necessary the retention of the bill under consideration to maintain the status quo, for it is not averred that any change in the present situation is threatened, and further no such relief is asked. It follows from what has been said that the bill was properly dismissed.

The decree is affirmed at the cost of appellant.