DR. CARLOS ROVIRA PALÉS, Plaintiff and Appellant, *v.* PUERTO RICO TELEPHONE COMPANY, Defendant and Appellee. RUFINO BORRERO CARTAGENA, Plaintiff and Appellant, *v.* PUERTO RICO TELEPHONE COMPANY, Defendant and Appellee. JOSÉ M. EMMANUELLI ET AL., Plaintiffs and Appellees, *v.* PUERTO RICO TELEPHONE COMPANY, Defendant and Appellant. MARY GONZÁLEZ RIVERA, Plaintiff and Appellee, *v.* PUERTO RICO TELEPHONE COMPANY, Defendant and Appellant.

Nos. R-65-223,    Decided May 14, 1968.
R-66-24,
R-66-60,
R-67-5.

*Fernando Gallardo Díaz* for appellants in Cases Nos. 65-3571 and 65-5434. *McConnell, Valdés, Kelley & Sifre* and *Baltazar Corrada* for appellee in Cases Nos. 65-3571 and 65-5434, and of appellant in Cases Nos. CS-64-3558 and CS-63-3387. *Enrique Clavell Borrás* as amicus curiae in Case No. 65-3571. *Baragaño, Trías, Saldaña, Harris & Francis* and *C. Arzuaga Algarín,* as amicus curiae in Cases Nos. 65-3571, 65-5434, and CS-64-3558. *Héctor Lugo Bougal, Delia Lugo Bougal,* and *Delia María Auffant* for appellees in Case No. CS-64-3558.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

These appeals, which have been consolidated for the purpose of their decision, arise on the margin of differences of opinion in the different parts of the Superior Court as to the scope and construction of §§ 20 and 66 of the Puerto Rico Public Service Act now in force, Act No. 109 of June 28, 1962, 27 L.P.R.A. §§ 1107 and 1277. Suits were brought by four users of the Puerto Rico Telephone Company by reason of the suspension of the telephone service which they had been enjoying. Rovira, Borrero, and González only alleged that the suspension was not justified; Emmanuelli, that the service was suspended under the pretext that he was not up-to-date in his monthly payments when he actually was.

It is not necessary to consider the application of the well-known doctrine of administrative law on "primary jurisdiction." *Commonwealth* v. *12,974.78 Square Meters,* 90 P.R.R. 494 (1964) and cases cited therein; *Medina* v. *Pons,* 81 P.R.R. 1 (1959); 2 Cooper, State Administrative Law 562–572 (1965); Jaffe, Judicial Control of Administrative Action 121–141 (1965); 3 Davis, Administrative Law Treatise §§ 19.01–19.09 (1958). The contention of the parties narrows down to a question of statutory construction: the Company maintains that by virtue of § 20 the Public Service

Commission has exclusive jurisdiction to entertain cases like the one at bar; the users insist that § 66, by its own terms, grants coextensive jurisdiction to the courts and that it is merely a choice of forum. In this sense their position seems to admit that but for § 66 the exclusive jurisdiction is in the Public Service Commission.

For a better understanding of the question involved we copy both provisions below:

"Section 20.—*Determination of Damages*

"(a) When the Commission, after a hearing, determines that any rate collected, act done or omitted, or practice put into effect, has violated any order, or is unfair or unreasonable, or establishes unfair or undue preferences, or that the rate collected exceeds the rate filed, published and effective at the time the service was rendered, it may order the public-service company or private carrier to pay to the party aggrieved, within a reasonable specified time, for the damages sustained due to the rate, act, omission, or unfair, unreasonable or unlawful practice. The order issued to that effect shall set forth the findings of fact and the amount to be paid.

"(b) If the public-service company or private carrier does not comply with the aforesaid order for the payment of money within the time fixed, the person to whom such payment is directed to be made may bring action therefor, which action, whatever the amount involved, shall be prosecuted according to Rule 60 of Civil Procedure, in force. The order of the Commission shall be prima facie evidence of the facts therein stated, and that the amount awarded is justly due the plaintiff in such suit. The public-service company or private carrier sued may not plead as a defense that the service was in fact rendered to plaintiff at the price stipulated in its rate in force at the time payment was made and received.

"(c) No reparation shall be awarded by the Commission unless the complaint or petition shall have been filed before it within two years from the time the chose of action arose. Suit for the enforcement of an order for such payment shall be commenced within one year from the date of the order.

"(d) No action shall be brought on account of damages or losses to which this section refers until the Commission shall

have determined that the rate, act or omission in question was unfair, unreasonable, or unjustly discriminatory or unduly or unreasonably preferential, or in excess of the prices under said rates, and such action shall be restricted to recover such damages as the Commission may have awarded and ordered paid.

"(e) As part of the proceedings, the Commission may order defendant to discontinue to charge the rate or to carry out or omit the act or practice the object of the complaint and, to such effect, it may require from plaintiff to deposit in the Secretariat a reasonable sum in harmony with the amount justified by the terms of the complaint and subject to any further determination which the Commission may later make."

"Section 66.—*Liability for Damages Arising from Violations.* —Any public-service company or private carrier that does or causes to be done any act, matter or thing prohibited or declared unlawful by this act, or that shall refuse, neglect or omit to do any act, matter or thing required to be done by this act, shall be liable to the person aggrieved thereby for the full amount of damages or losses sustained by the latter on account of the former's acts or omissions. The liability of a public-service company or private carrier for negligence, as established by law, shall not be held or construed to be altered or repealed by any of the provisions of this act."

With slight variations in style, these provisions are a reproduction of §§ 28 and 100 of the former Public Service Act, Act No. 70 of December 6, 1917 (Sess. Laws, p. 432), adopted for the purpose of implementing § 38 of the Jones Act. *Santiago* v. *P.S. Comm. et al.,* 37 P.R.R. 467, 473–478 (1927).[1] In turn, §§ 28 and 100 of the Act of 1917 are a literal translation of § 5 of Art. V and § 40 of Art. VI of

---

[1] Prior to 1917, the regulation of public-service corporations corresponded to the Executive Council pursuant to the Act of March 12, 1908 (Sess. Laws, p. 97). Except for § 10, no other provision sheds light on the matter under consideration. Said section provided a simple procedure for the filing of a "complaint" for "any act done or omitted to be done by any public service corporation in violation or claimed to be in violation of any provision of this act, or of the terms and conditions of its franchise or concession, or any order or regulation issued by the Executive Council," and authorized the Executive Council to issue, according to its opinion, the pertinent order or orders according to the circumstances.

Act No. 854 of July 26, 1913, of the state of Pennsylvania (Sess. Laws, p. 1374) which served as a model for ours. *Alers* v. *Superior Court*, 83 P.R.R. 676, 679 (1961).

Construing similar provisions,[2] the Supreme Court of Pennsylvania stated in unequivocal terms in *Borough of Lansdale* v. *Philadelphia Electric Co.*, 170 A.2d 565 (1961) the following:

"Although we still possess the right of judicial scrutiny over the acts of the PUC, no principle has become more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts. It has been so held involving rates, *service, rules of service,* extension and expansion, hazard to public safety due to use of utility facilities, *installation of utility facilities,* location of utility facilities . . . ." (Italics ours.)

The most recent case we have been able to find, *Einhorn* v. *Philadelphia Electric Company*, 190 A.2d 569 (Pa. 1963), dealt with a proceeding on petition for depositions for the purpose of bringing an action to escheat certain funds which a public-service enterprise had received for the installation of underground service-supply lines. The company invoked the jurisdictional question. In a decision favorable to the enterprise it was said at page 571:

"Both the Public Utility Law and the decisions of this Court, with unmistakable clarity, require that questions dealing with excessive charges be decided in the first instance *exclusively* by the Commission. In the absence of such determination, there is no escheatable property . . . ." (Italics ours.)

See also, *Borough of Midland* v. *Steubenville, E.L. & B.V.T. Co.*, 150 Atl. 300, 302–303 (Pa. 1930), and *York Water Co.* v. *City of York*, 95 Atl. 396 (Pa. 1915).

---

[2] 66 P.S. §§ 1153 and 1500 (Purdon's Penna. Statutes Annotated), which substituted §§ 5 and 40 of Arts. V and VI of the Public Service Act of 1913.

■ Irrespective of the fact that this construction of the statute, from which ours originated, is persuasive, an examination of both provisions supports the conclusion that § 66 rather contains a reserve for cases not covered by § 20. It is significant that the latter is part of Chapter III of the Act which deals with the "Powers and Duties of the Commission" while the former appears in Chapter V which comprises the provisions on "Practice and Procedure Before the Commission, Judicial Review." Generally, it may be said that § 66 is a reaffirmation of the liability imposed on every person for *extracontractual* negligence including public-utility enterprises, by virtue of the general provisions of the Civil Code and other liabilities imposed by the law, which has no *direct relation* to the public service rendered by the enterprises; and that § 20, conceived in such broad terms, covers the relations between the public-utility enterprise and the consumer, as well as the claims arising therefrom.[3] Thus,

---

[3] On September 10, 1965, the Civil Service Commission (Annual Report, 1965–66, p. 15) adopted a regulation on a scale of rates and general provisions applicable to the services rendered by the Puerto Rico Telephone Company. General provision No. 7 amply regulates the suspension and reinstallation of the service. It states:
"A. *Nonpayment of bills*
"1. Every Kind, Type or Grade of Local and Long Distance Calls
"In the event of nonpayment by a subscriber of any amount due for local calls, for long distance calls or any other service furnished by the Company, the latter can:
"a. Suspend, partially or totally, the service to said subscriber after serving him written notice of his payment in arrears and of the intention of suspending said service or services. The subscriber will not be entitled to any adjustment whatsoever in the charges of the rental for the period covered by said suspension.
"b. Disconnecting any or all the service and removing any Company equipment from any of the subscriber's premises after ten days have elapsed from the suspension of the service for nonpayment.
"2. Previous Service
"The Company reserves the right to deny service to any person who has payments in arrears with the Company for services previously rendered by the latter to the former. In the event the Company is rendering services to any person and it is subsequently discovered that said person

for example, a claim for damages caused by a vehicle of the telephone company is heard before the courts pursuant to § 66; a user's claim for damages caused by the suspension of

is indebted to the Company for services previously rendered, the Company is entitled to suspend the service rendered for nonpayment unless the debt be paid within ten days from the date the corresponding bill is presented by the Company. The fact that the Company renders services to any debtor for previous services shall not be considered as a waiver by the Company to any right whatsoever.

"B. *Unauthorized Insecure Facilities, Equipment or Apparatus*
  ".     .     .     .     .     .     .

"C. *Fraud*
  ".     .     .     .     .     .     .

"D. *Noncompliance*
  "The Company shall have the right to suspend the telephone service to a subscriber for noncompliance with any of these regulations, provided that after at least ten days of service of written notice he has not agreed to comply with the requirement.

"E. *Subscriber's Request for Suspension or Temporary Disconnection*
  ".     .     .     .     .     .     .

"F. *Restoration—Restoration of Service Charge*
  ".     .     .     .     .     .     .

"G. *Use of Abusive Language by Subscribers*
  "The Company can suspend telephone service to any subscriber who uses abusive or profane language, or impersonates any other individual with fraudulent intent, through any line connected to the Company's system after being warned thereof.

"H. *Temporary or Permanent Disconnection of the Service*
  "Where the Company has the right to disconnect, temporarily or permanently, the service, as established in these regulations, it may do it optionally.

"I. *Illegal Use*
  "The Company will disconnect the service by reason of illegal use.

"J. *Abandonment of Service*
  "The Company has the right to suspend the service and remove the equipment when the subscriber abandons the premises where the equipment is installed.

"K. *Unauthorized Attachments*
  "The subscriber cannot and will not permit others to attach, install, or connect directly or by induction to lines or facilities of the Company, any equipment, apparatus, or device of any kind whatsoever which is not furnished and installed by the Company. The Company shall have the right to suspend the service of a subscriber for noncompliance with this regulation provided that after at least ten days of service of written notice he has not agreed to comply with the requirement."

the service, before the Public Service Commission, pursuant to § 20.[4]

If it were necessary, practical considerations would lead us to prefer the conclusion we have reached acknowledging that these claims related to the service rendered by public-service companies should be heard in first instance before the entity which regulates them. Any other solution would result in congesting even more our courts of first instance.[5]

---

For the interest it may have we copy below subdivision VI of general provision No. 5 which establishes the procedure in relation to objected accounts.

"VI. *Procedure in relation to objected accounts*

"In the event of objected accounts, in order to avoid the suspension of the service for nonpayment the subscriber shall, within ten days after the bill is presented, pay the amount not objected to and notify the Company which are the charges objected to and the reason therefor. Within thirty days after receipt of the notice the Company shall investigate the facts and notify the subscriber the results of the investigation. If the Company and the subscriber cannot resolve the controversy between themselves the subscriber shall, within fifteen days from the final notice of the Company, pay the amount under protest or deposit said amount simultaneously with the filing of the complaint before the Public Service Commission, until the latter decides the case. Otherwise, the Company may suspend the service for nonpayment of said amount.

"However, the Commission in any case in which in its opinion, it is justified, because of the nature of the allegations contained in the complaint, may relieve the complainant from depositing in this agency part or the total sum object of the protest, and the Company shall not suspend the telephone service to the user until the case is decided on the merits in due time."

[4] The Legislature incorporated provisions almost identical with §§ 20 and 66 in approving the "Act Regulating the Sugar Industry of Puerto Rico," Act No. 221 of May 12, 1942 (Sess. Laws, p. 1176), see §§ 27 and 61, thus pointing out that there is a particular ambit for each one of them. We doubt very much that the legislative intent was then that the multiple controversies arising in the sugar industry be heard in the courts of justice.

[5] From the annual reports of the Public Service Commission it appears that the greater number of complaints received by that entity refer to the telephone service.

| Year | Total of Complaints | Complaints Against the Telephone Company |
|---|---|---|
| 1966–67 | 1,053 | 603 |

Naturally, if the present legal situation, as explained in this decision, were not enough to protect the users who suffer damages as a result of the noncompliance or obstinacy of the telephone company, it is expected that the Legislature shall again consider the matter and shall introduce the pertinent amendments.

For the reasons stated we decide that the users' complaints in relation to the telephone service shall be originally heard before the Public Service Commission.

Judgment will be rendered accordingly.

Mr. Justice Santana Becerra dissented.

—O—

MR. JUSTICE SANTANA BECERRA, dissenting.

San Juan, Puerto Rico, May 14, 1968

1. In appeal R-65-223 Dr. Rovira Palés filed, in the Superior Court, San Juan Part, a complaint for damages against the Telephone Company for noncompliance with a telephone-service contract. He alleged that without any motive or reason, by its fault, negligence, and bad faith, the Company deprived and was still depriving him of said service.

San Juan Part (Frank Paganacci, Judge) dismissed the action for lack of jurisdiction, considering that the matter corresponded to the Public Service Commission pursuant to

---

| 1965–66 | 1,090 | 781 |
| 1964–65 | 1,308 | 990 |

In both reports it is stated that the majority of the complaints are based on the suspension of the service by the Company, and that additional calls objected by the user follow in order.

For the purpose of giving an idea of the users' different reasons for filing complaints we made use of the itemized statement which the Company prepares for statistical purposes. In addition to those aforecited they relate to the transfers of telephones, service deficiencies, unattended applications, undue charges, changes in the service, changes in rates, and charges for long-distance calls.

§ 20 of the Act which created it, Act No. 109 of June 28, 1962.

2. In appeal R-66-24, plaintiff Cartagena filed, in the Superior Court, San Juan Part, a complaint for damages against the Company alleging that defendant deprived him of telephone service without any reason or cause therefor, and refused to reinstall it, thereby failing to comply with the service contract.

San Juan Part (Fausto Ramos Quirós, Judge), dismissed the complaint for lack of jurisdiction, for similar reasons.

3. In appeal R-66-60, Emmanuelli filed, in the Superior Court, Ponce Part, a complaint for damages against the Company for the discontinuance of the service without any cause or justification, for alleged nonpayment, which was not true.

Ponce Part (Armindo Cadilla, Judge), dismissed the contention of lack of jurisdiction, and rendered judgment sustaining the complaint.

4. In appeal R-67-5, plaintiff González Rivera filed a complaint for suspension of the service and deprivation of her installed telephone.

The Superior Court, San Juan Part (Manuel A. Moreda, Judge), upheld its jurisdiction and sustained the complaint on the facts proved.

All these decisions are reviewed. In appeal R-65-223 we admitted the user Enrique Clavell as "amicus curiae", and also we admitted the law firm Baragaño, Trías, Saldaña, Harris, and Francis in identical capacity.

After analyzing the question in issue, I agree with judges Cadilla and Moreda, with the attorneys for the users as well as with the "amicus curiae," Baragaño, Trías, Saldaña, Harris, and Francis, that the Superior Court had jurisdiction to decide these cases, in the light of the facts involved.

Section 20 of the Puerto Rico Public Service Act, Act No. 109 of June 28, 1962, provides that when the Commission,

after a hearing, determines that any rate collected, act done or omitted, or practice put into effect, *has violated any order*, or is unfair or unreasonable, (the practice) or establishes unfair or undue preferences, or that the rate collected exceeds the rate filed, published and effective at the time the service was rendered, *it may order* the . . . company . . . to pay . . . for the damages sustained due to the rate, act, omission, or unfair, unreasonable or unlawful practice.

Among the duties directly imposed by law on the public-service company there is that of rendering its services when reasonably requested, and maintaining said services adequately. Section 38.

At the end of the Act, after the Legislature had provided extensively for the practices and proceedings before the Commission and for the judicial review of such practices, §§ 40–61, it prescribed in § 66, and having knowledge of the preceding legislation, that any public-service company that does or causes to be done any *act, matter, or thing prohibited or declared unlawful by this Act*, or that shall refuse, neglect or omit to do any act, matter or thing *required to be done by this Act*, shall be liable to the person aggrieved thereby for the full amount of damages sustained by the latter on account of the former's acts or omissions. And it is provided that the liability of a public-service company *for negligence*, as established by law, shall not be held *or construed* to *be altered* or repealed by *any* of the provisions of said Act.

In view of the facts involved in these cases, fundamentally there is in the bottom a service contractual relation. Negligence is not excluded from the relation and from the contractual performance. Obligations are created by law, by contracts, by quasi-contracts, and by unlawful acts and omissions or by those in which any kind of fault *or negligence* occurs, according to the Civil Code, § 1042 (1930 ed.).

Section 1054 provides that those who in fulfilling their obligations are guilty of fraud, *negligence*, or delay shall be subject to indemnify for the losses and damages caused thereby.

It is evident that the Company was negligent in fulfilling its contractual obligation—because otherwise we would have to conclude that there was fraud or bad faith—in the act of discontinuing a service for alleged nonpayment, the contrary having been proved; in the discontinuance of a service and seizure of the telephone on the basis of an alleged transfer requested by a user, who had not requested it.

In the absence of a clear expression of the Legislature providing for a saving clause, I do not find any basis at law to deprive these users of the ordinary jurisdiction of the courts in view of the facts involved. Especially, if we consider the merely *permissible* language used by the lawmaker in § 20 as to the intervention of the Commission.

Furthermore, I see other considerations of public necessity. The administrative procedures of the Act are long and devious. They are not simple. If the Commission does not agree to hear the complaint of a user, he would have to resort to the Superior Court and eventually to this Court by a narrow path limited as to the facts and through a system full of technicisms. If it is admitted the Company likewise could resort to such proceedings of review. Possibly, all that before an administrative determination of damages is made on the merits. Even after such determination on the merits they would have to resort to a court to enforce payment.

Experience shows that the user may remain at the expense of a more alert and vigilant attitude of the administrative entity or less alert and vigilant, depending on whatever reasons, including the physical and economic means which would be provided to the administrative entity to fulfill this duty.

Except for a higher legislative opinion expressly denying it, it seems to me that said users should not be deprived, in view of the facts involved, of the judicial function. There occurs herein what the law prohibited, that the liability for negligence imposed on the Company by § 66 is *altered* by construction.

I would affirm the judgments in cases R-66-60 and R-67-5 and reverse those in cases R-65-223 and R-66-24.