## Bell Telephone Company of Pennsylvania
## v. Bristol Township

*Eastburn and Gray*, for plaintiff.

*Robert L. White*, for defendant.

GARB, J., August 30, 1971.—This is an action in equity instituted by the Bell Telephone Company of Pennsylvania against the Township of Bristol seeking to enjoin the township from taking any action to enforce the provisions of two ordinances of the township, specifically identified in the complaint, and requesting that the aforesaid ordinances be declared unlawful, illegal and void and, therefore, unenforceable as to plaintiff. The case was submitted to the court on a case stated and argued before the court en banc.

We adopt as findings of fact, the facts set forth in the case stated, as well as paragraphs 1 through 9, inclusive, of the complaint, all of which were admitted by defendant's answer. Those facts establish that plaintiff is a public utility corporation organized and existing under the laws of Pennsylvania, with its principal office at 1 Parkway, Philadelphia, Pa., and is engaged, both in the County of Bucks and elsewhere within the Commonwealth of Pennsylvania, in furnishing telephone and other communication services to the public. The Township of Bristol is a first class township operating under the provisions of the First

Class Township Code of May 27, 1949, P. L. 1955, 53 PS §55101, et seq. Plaintiff provides telephone and other telecommunication services to the public throughout the Commonwealth of Pennsylvania under the jurisdiction and regulation of the Pennsylvania Public Utility Commission, pursuant to the provisions of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1101, et seq. The said Public Utility Law, as well as the regulations propounded by the Public Utility Commission pursuant to its authority so provided in the said Public Utility Law, contain various provisions regarding the service and facilities as well as the maintenance thereof to be provided by plaintiff as a public utility which shall be set forth in further detail hereinafter as appropriate. In compliance with the aforesaid regulations, plaintiff has adopted a program of periodic tests and inspections for the repair and replacement of its poles.

On or about March 6, 1951, the Board of Commissioners of the defendant-township passed ordinance no. 4, inter alia, assessing a license charge or inspection fee of 25 cents per pole per annum on all telegraph, telephone, trolley, electric light and similar poles erected within any public highway, road, street, avenue, lane or alley in the township. Said ordinance also requires that all poles be lettered or stenciled with the initials of the owners or some other designation of ownership, and that a complete record showing the location and number of each pole be filed with the township secretary annually. On or about January 15, 1969, the Board of Commissioners of the defendant-township passed ordinance no. 623, which amended ordinance no. 4, so as to increase the aforesaid license charge or inspection fee to $1 per pole per annum. On or about January 8, 1970, defendant sent plaintiff a bill described as "Utility Poles—Tax Due for Year of

1969" billing plaintiff for 1,285 poles at $1 per pole or $1,285. On or about February 15, 1971, defendant sent to plaintiff a bill for "utility poles—tax due for year 1970" for 1,275 poles at $1 per pole or $1,275 and for "utility poles—tax due for year 1969 (unpaid)" for 1,285 poles at $1 per pole or $1,285 or a total bill of $2,560. Plaintiff has refused and continues to refuse to pay defendant's bills hereinbefore referred to and, therefore, on October 12, 1970, defendant informed plaintiff by letter of its intention to proceed with the enforcement of the aforesaid ordinances.

In furnishing communication services throughout the Commonwealth of Pennsylvania and between the States of the United States, plaintiff owns and maintains 1,002,750 poles which are an essential part of plaintiff's communications system. Approximately 1,289 of such poles are maintained with the right-of-way of public streets of defendant-township.

Plaintiff's business of supplying telephone and telegraph service to the public is conducted under the jurisdiction and regulation of the Pennsylvania Public Utility Commission pursuant to the Public Utility Law of the Commonwealth of Pennsylvania. Plaintiff's communications lines, including those in defendant-township, are operated and maintained under the jurisdiction and regulation of the said Pennsylvania Public Utility Commission. Plaintiff is required by the Public Utility Law of the Commonwealth of Pennsylvania, as administered by the Pennsylvania Public Utility Commission, to provide the public with such telephone and telegraph service and to maintain such transmission lines, poles, equipment and facilities and the furnishing of such service as shall be necessary and proper for the accommodation, convenience and safety of the public.

Although plaintiff purports to attack ordinance no.

4 and its amendment by ordinance no. 623 in their entirety, it is clear that the attack is directed specifically upon section 11(b) of ordinance no. 4, as amended by ordinance no. 623. This specific section provides as follows:

"That on and after April 1, 1951, a license charge or inspection fee of Twenty-five cents ($0.25) per pole per annum shall be and hereby is assessed on all poles erected within any public highway, road, street, avenue, lane or alley in the Township of Bristol."

The rest of ordinance no. 4 deals extensively with the requirements, restrictions and conditions, together with filing and indemnity fees, for the opening of public streets, the purpose of placing therein pipes, sewers, drains or conduits or for the setting or planning of telegraph, telephone, electric light or other poles, or for repairs thereto or renewals thereof, as well as the emplacing of sidewalks, curbs and gutters within said public ways, erection of gasoline pumps, oil tanks or other obstructions or the planting of any trees or shrubbery within the said public ways, and other similar matters. Ordinance no. 623 amended ordinance no. 4 solely to increase the license charge or inspection fee from twenty-five cents to $1 per pole per annum. There is no provision in either ordinance providing for inspection or maintenance of the said poles by the defendant-township, nor any procedure to effectuate the repair of same.

As heretofore noted, the bills rendered by defendant-township denominated the charge as a tax on the poles. The ordinances themselves denominate the charge as a license charge or inspection fee. Clearly, if the assessment is, in fact, a tax, it cannot stand and must be stricken. A political subdivision, and a first class township as such, has only those powers specifically delegated to it by the legislature: Commonwealth v.

Hanzlik, 400 Pa. 134 (1960). If the township is to have the right to tax these poles, its power to do so must be derived from the so-called "Tax Anything Act" of December 31, 1965, P. L. 1257, sec. 2, as amended, December 21, 1967, P. L. 878, sec. 1, 53 PS §6902. The foregoing act specifically excepts from the political subdivisions the power to impose any tax on a privilege, transaction, subject, occupation or personal property which becomes subject to a State tax or license fee. The act further exempts from taxation gross receipts from utility service from any person or company whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission or any public utility services rendered by any such person or company or on any privilege or transaction involving the rendering of any such public utility service. Additionally, there is an exemption from taxation on the privilege of employing such tangible property as becomes subject to a State tax. Pursuant to the Act of December 31, 1969, P. L. 419, sec. 1, 72 PS §1871, plaintiff pays a capital stock tax to the Commonwealth of Pennsylvania. Pursuant to the Act of July 8, 1941, P. L. 280, sec. 1, 66 PS §1461, plaintiff-corporation pays an assessment to the Commonwealth for its pro rata share of the expenditures of the Public Utility Commission in supervising and regulating its operations. The capital stock tax is a tax on the property of the corporation: National Biscuit Company v. Philadelphia, 374 Pa. 604 (1953). A license fee, regardless of the name given it by the legislature, is a tax on the privilege of doing business collected for the purpose of defraying expenses of the regulation of the acts for the benefit of the public: National Biscuit Company v. Philadelphia, supra. Therefore, it is clear that both the State capital stock tax and the assessment paid to the Public Utility

Commission by plaintiff constitute, respectively, taxes on property and a license fee paid to the Commonwealth. Therefore, the activities of plaintiff-corporation are exempt from taxation under the "Tax Anything Act" as is the privilege of employing such tangible property of plaintiff as it is likewise subject to State tax. As noted, the personal property of an entity paying State tax upon said property is likewise exempt. Therefore, there being no specific delegated authority in defendant-township to collect a tax on plaintiff's poles, if this assessment is a tax, it cannot stand. See also Panther Valley Television Company v. Summit Hill Borough, 376 Pa. 375 (1954), wherein the court held that the municipality may not impose a tax on the television towers of the utility where the facilities of the utility are taxed by the State.

If this assessment is not to be considered a tax, it must be considered to be as in the nature of either an inspection or a regulation charge of some sort. Obviously, an inspection fee without commensurate and appropriate follow up would be entirely valueless and meaningless. As heretofore noted, the ordinance in question provides for no procedure whereby defects or deformities in these poles shall be removed, repaired or corrected and provides no penalty whatsoever for the failure of the utility to do so. The only remedy is imposed upon the failure of the utility to pay this assessment. In any event, we are satisfied that if this assessment is for the purpose of in any way regulating or administering these facilities of the utility, the assessment is void and must be stricken.

It is true that prior to the enactment of the Public Service Law and the creation thereby of the Public Service Commission under the Act of July 26, 1913, P. L. 1374, there was authority vested in a municipality to exercise some degree at least of regulation and

control over public utilities operating within its confines. See Kittanning Borough v. Consolidated Natural Gas Company, 219 Pa. 250 (1908). However, with the advent of the aforesaid Public Service Law, the legislature intended to provide a complete service for the supervision and regulation of public service corporations and to repeal all former acts inconsistent therewith. Any matter falling within the purview of the authority of the Public Service Commission under that act was held to repose exclusively before the Public Service Commission to the exclusion of the municipality. The legislative intent was to make the Public Service Act the supreme law of the State and of the regulation and supervision of public service corporations. The Public Service Law was intended to establish a complete and uniform system throughout the State for the enforcement of such powers as were conferred upon the Public Service Commission by that statute, and if the act did not so provide in express terms, it would operate as a repeal of former statutes inconsistent with its provisions: York Water Company v. York, 250 Pa. 115 (1915). Thus, it was consistently held that all matters within the purview of the Public Service Commission were such that at least original or initial jurisdiction over those matters reposed in the Public Service Commission to the exclusion of municipalities as well as the courts. See Midland Borough v. Steubenville, etc., Traction Company et al., 300 Pa. 134 (1930), and St. Clair Borough v. Tamaqua & Pottsville Electric Railway Co. et al., 259 Pa. 462 (1918).

The enactment of the Public Utility Law as the successor to the Public Service Law has always compelled consistent results. In citing Lansdale Borough v. Philadelphia Electric Company, 403 Pa. 647 (1961), the Supreme Court in Chester County v. Philadelphia

Electric Company, 420 Pa. 422 (1966), held that exclusive original jurisdiction over all matters relating to the rendition of service of a public utility lie with the Public Utility Commission and that there is absolutely no authority in the County Code allowing control by a county of a public utility. We likewise note that we have searched in vain in the First Class Township Code to find any authority delegated by the legislature to the municipality to exercise any control over a public utility. The Act of May 27, 1949, P. L. 1955, sec. 64, 53 PS §58502, specifically provides that the First Class Township Code does not repeal any provision of the Public Utility Law. Therefore, we conclude that exclusive jurisdiction lies in the Public Utility Commission for all matters involving rates, service, rules of service, extension and expansion, hazards to public safety due to use of utility facilites, installation of utility facilities, location of utility facilities, obtaining, altering, dissolving, abandoning, selling or transferring any right, power; privilege, service, franchise or property and rights to serve particular territory: Chester County v. Philadelphia Electric Company, supra.

As stated in the foregoing case, the necessity for conformity in the regulation and control of public utilities is as apparent as the electric lines which one views traversing the Commonwealth. If each county were to be permitted to enact its own regulation and control over electric wires, pipelines and oil lines, the conveyors of power and fuel could become so twisted as to effect adversely the welfare of the entire Commonwealth. It is for this reason that the legislature has vested in the Public Utility Commission exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance of all public utility facilities.

The provisions of the Public Utility Law, together with the regulations duly promulgated thereunder, have designed and developed the machinery which standardizes the construction, operation and service of public utilities throughout Pennsylvania: Chester County v. Philadelphia Electric Company, supra. See also Behrend v. Bell Telephone Company of Pennsylvania, 431 Pa. 63 (1968) and Einhorn v. Philadelphia Electric Company, 410 Pa. 630 (1963). It was specifically held in Duquesne Light Company v. Upper St. Clair Township, 377 Pa. 323 (1954), that the policy of the Commonwealth in entrusting to the commission the regulation and supervision of public utilities has excluded townships* from the same field, and that no power in townships to enter the area can be read into the First Class Township Law by implication. Unless the legislature has given an express grant of power to townships, the Commonwealth's own expressed policy on the subject is undiminished and supreme.

It is abundantly clear that any matters which this assessment section of the ordinance in question are intended to cover are fully and adequately covered in the Public Utility Law and, therefore, the power to enact such regulation by the municipality has been usurped. Section 401, 66 PS § 1171, provides that every public utility shall furnish and maintain adequate, efficient, safe and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions.

Section 413, 66 PS § 1183 provides that whenever the commission, after reasonable notice and hearing, upon its own motion or upon complaint, finds that the service or facilities of any utility are unreasonable,

---

\* Upper St. Clair Township being a First Class Township.

unsafe, inadequate, insufficient or unreasonably discriminatory, or otherwise in violation of the act, the commission shall prescribe by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished or enforced, which shall be reasonably necessary and proper for the safety and convenience of the public.

Section 908, 66 PS §1348, provides that the commission shall have full power and authority to make any inspection, valuation, physical examination, inquiry or investigation of any and all plant and equipment, facilities, property and pertinent records, books, papers, memoranda, documents, or effects whatsoever of any public utility.

Section 904, 66 PS §1344, provides that the Attorney General of the Commonwealth shall proceed in the name of the Commonwealth to bring whatever appropriate action is necessary in the courts to restrain violations of the provisions of the Public Utility Law, or of the regulations or orders of the commission. Therefore, it can be seen that the Public Utility Law in its very provisions fully and adequately provides for inspection and maintenance of public utility facilities and the enforcement of the standards fixed by the Public Utility Commission by virtue of its regulation making authority. Certain regulations have, in fact, been propounded requiring each public utility to make periodic tests, inspections and preventive maintenance aimed at achieving continuous efficient operation of its system in a manner satisfactory to the commission and to maintain its entire system in such condition as to make it possible to furnish continuous service. If the township is of the opinion or determines that any of the facilities of the utility are in fact in such condition as to be detrimental to the public welfare, a remedy

resides in asking the Public Utility Commission to provide regulations which will protect the municipality, or may apply directly to the legislature for necessary amendments to the Public Utility Law: Chester County v. Philadelphia Electric Company, supra.

Although we have found no appellate court authority directly on the question before us, all of the decisions in lower courts which we have found in this Commonwealth are consistent with our holding. In UGI Corporation v. City of Allentown, 48 D. & C.2d 516 (1969), the court struck down a license tax on all gas mains located within the City of Allentown. In Pennsylvania Power & Light Company v. West Mahanoy Township, 33 D. & C.2d 268 (1963), the court struck down an annual inspection and license fee imposed upon all public utility poles within the various streets or ways of the township. In UGI Company v. Borough of Dallas, 58 Luz. Leg. Reg. 159, the court likewise struck down a license fee imposed upon public utility poles. In Pennsylvania Power & Light Co. v. City of Scranton, 66 Lack. Jur. 17 (1965), the court struck down a similar assessment.

We believe that the township's two main defenses of this ordinance can be disposed of summarily. The township's assertion of the right to impose this assessment under its police power has been adequately laid to rest by the showing that whatever matters the municipality may wish to supervise are adquately covered by the Public Utility Law. Furthermore, this ordinance fails to set forth any regulatory provisions which can in any way be related to the police powers of the municipality. A legislative body under the police power does not possess the power to enact rules having no substantial relation to the end to be

attained: Harris v. State Board of Optometrical Examiners, 287 Pa. 531 (1926).

Secondly, the municipality's reliance upon the most recent amendment to the Pennsylvania Corporation Law is ill-founded. See the Act of July 20, 1968, (No. 216), sec. 17, 15 PS §1322. The township places its reliance upon the last sentence of section E, which reads as follows:

"Before entering upon any street, highway or other public way the public utility corporation shall obtain such permits as may be required by law and shall comply with the lawful and reasonable regulations of the governmental authority having responsibility for the maintenance thereof."

We would presume that the township purports to sustain its assessment based upon the apparent requirement that the public utility comply with the lawful and reasonable regulations of the governmental authority. We would observe only that this applies only to "lawful" regulation and as indicated herein any supervision or control exercised by the municipality over the facilities of the public utility are not "lawful." In addition, we do not perceive that this ordinance as related to this annual assessment imposes any regulation of the governmental authority other than the one requiring payment of the exaction. Therefore, we do not believe that the township can save its assessment by virtue of this section of the corporation code.

For the foregoing reasons, we are satisfied that the assessment contained in ordinance no. 4, as amended by ordinance no. 623, is void and of no effect and accordingly enter the following order:

And now, to wit, August 30, 1971, it is hereby ordered, directed and decreed that section 11(b) of Ordinance no. 4 of the Township of Bristol, Bucks County, Pa., as amended by ordinance no. 623 of the

said township, is hereby declared to be null, void and of no effect and the township is hereby permanently enjoined from enforcing the said sections of the said ordinance as amended against the plaintiff herein.