Einhorn, Appellant, *v.* Philadelphia Electric Company.

Argued January 8, 1963. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Michael Edelman,* for appellant.

*Harold E. Kohn,* with him *William T. Coleman, Jr., Bruce W. Kauffman, Samuel Graff Miller, Vincent P. McDevitt,* and *Dilworth, Paxson, Kalish, Kohn & Dilks,* for appellee.

Opinion by Mr. Justice Roberts, April 30, 1963:

Appellant, an escheator of the Commonwealth, filed a petition for depositions, discovery and inspection,[1] in

---

[1] The Act of May 2, 1889, P. L. 66, §8, amended by Act of July 29, 1953, P. L. 986, No. 247, §4, 27 P.S. §43(b), provides: "The escheator may, either before or after filing a petition in escheat, file

the Court of Common Pleas No. 2 of Philadelphia County, naming appellee, Philadelphia Electric Company [Company] as respondent. The Company is a public utility engaged in furnishing electricity to the public at rates fixed in tariffs filed by it with the Pennsylvania Public Utility Commission [Commission].

The information sought, appellant averred, was relevant to escheat and would substantially aid in the preparation of the pleadings in such proceedings. The funds which appellant seeks to escheat[2] involve various sums of money received by the Company (more than seven years previously) from certain of its customers (or their contractors) for work performed in the installation of underground electric service-supply lines, at rates alleged to be higher than permitted under Company tariffs filed with the Commission.[3] The Company filed preliminary objections and a motion for a protective order, asserting, inter alia, that: (1) jurisdiction to determine the validity of tariffs and their application to particular charges is vested exclusively in the Commission; (2) the petition reveals it is not seeking property subject to escheat, and (3) the dis-

---

a petition in the court of Common Pleas . . ., praying for depositions, discovery and inspection, and the procedure upon such petition shall be in accordance with the Pennsylvania Rules of Civil Procedure relating to depositions, discovery and inspection."

Compare Act of June 7, 1915, P. L. 878, as amended, 27 P.S. §§241-284, which deals with unclaimed deposits not here involved.

[2] Section 3 of the Act of 1889, as amended, 27 P.S. §333, (b), (c), (d), provides in substance that where for seven successive years: (1) the owner or whereabouts of the owner of any property is unknown, or (2) where any property has been unclaimed, or (3) where property is without a rightful or lawful owner, such property shall escheat to the Commonwealth.

[3] Rule 3.6 of the Company's tariff filed with the Commission provides: "Underground Service. Customers desiring an underground service from overhead wires must bear the excess cost incident thereto."

covery sought could not substantially aid in the preparation of pleadings for any proceedings for escheat. The court, after a hearing on the petition, the preliminary objections, the motion and the answer thereto, sustained the preliminary objections and dismissed the petition for discovery. From that action, this appeal is taken.

Appellant's position is that the Company, in installing underground electric service facilities for certain customers, had "overcharged" by requiring and receiving payments representing more than "the excess costs" permitted for such installations in its filed tariff. It is contended that the Company was without legal authority to receive and customers to pay these overcharges, and that the excess charges constitute property without lawful owner and, therefore, are escheatable to the Commonwealth. The escheator asserts also, that since he is without knowledge or information as to the amount of such overcharges or the identity of customers from whom they were received, the information he seeks is relevant to the subject matter of the contemplated escheats and will substantially aid in the preparation of pleadings in such proceedings.

The Company contends that only the Commission is initially vested with jurisdiction to decide whether its charges were in excess of the applicable rates listed in its tariffs. In the absence of a ruling by the Commission that there were overcharges, the Company asserts its lawful ownership of the sums received and argues that there is no property subject to escheat and no subject matter for the court to adjudicate.

It is clear that the court below is statutorily vested with jurisdiction in escheat matters generally, except for those classes of escheats committed to the jurisdiction of the orphans' court.[4] Likewise, the Public Util-

---

[4] Act of May 2, 1889, P. L. 66, §5, as amended, 27 P.S. §41.

ity Law[5] and a long list of decisions of this Court[6] make it equally clear that all matters between public utilities and customers (including rates, installation of utility facilities and all compensation for service rendered to customers[7]) are initially vested in the Commission.

The Public Utility Law mandates that: *"No action shall be brought in any court for a refund, unless and until the commission shall have determined that the rate in question was . . . in excess* of the applicable rate contained in an existing and effective tariff, and then only to recover such refunds as may have been awarded and directed to be paid by the commission in such order."[8] (Emphasis supplied.)

In *Lansdale Borough v. Phila. Electric Company,* 403 Pa. 647, 650, 170 A. 2d 565, 566-67 (1961), this Court said: ". . . [N]o principle has become more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts. It has been so held involving rates, service, . . . installation of utility facilities, . . ." (Footnotes omitted.)

Both the Public Utility Law and the decisions of this Court, with unmistakable clarity, require that questions dealing with excessive charges be decided in the first instance exclusively by the Commission. In

---

[5] Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1101 et seq.

[6] See *Lansdale Borough v. Phila. Electric Company,* 403 Pa. 647, 170 A. 2d 565 (1961), and especially cases cited in the margins on pages 650-51 A. 2d at 567.

[7] See Public Utility Law, §2(19), 66 P.S. §1102(19) ; *Blythe Township Municipal Authority v. Penna. Public Utility Commission,* 199 Pa. Superior Ct. 334, 185 A. 2d 628 (1962).

[8] §313(c), 66 P.S. §1153(c).

the absence of such determination, there is no escheatable property. This is the basic weakness of appellant's position. Even if all of appellant's allegations are accepted and viewed in the most favorable light, the cause still lacks the fundamental prerequisite of an escheat proceeding—that there be property subject to escheat. Thus, there is no appropriate basis for allowing discovery. In this setting, the recent statement of the Court in *Cole v. Wells,* 406 Pa. 81, 91, 177 A. 2d 77, 82 (1962), is applicable and significant. ". . . [D]iscovery must not be allowed unless it is sought as a proceeding ancillary to a pending action and in the appropriate forum."

Although the Escheat Act[9] authorizes the escheator to petition for discovery "either before or after filing a petition in escheat", it directs also that the procedure upon such petition "shall be in accordance with the Pennsylvania Rules of Civil Procedure". These Rules are to be ". . . liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable."[10]

Allowing discovery under the circumstances here presented places the court below in the uncertain and perhaps hazardous role of directing discovery of facts on an issue which it has no authority to decide. Without decisional responsibility, the court lacks practical standards for exercising supervisory control over discovery of this nature.[11] To proceed without such guides is obviously unwise, particularly when there is no compelling reason for doing so.[12] Discovery in that event becomes not an aid but rather a hindrance to the

---

[9] See note 1, supra.

[10] Pa. R. C. P. 126.

[11] So also in effectively applying Rule 4012, which provides for protective orders.

[12] See note 13 and accompanying text, infra.

"just, speedy and inexpensive determination" of litigation.

An additional basis for refusing discovery is found in Rule 4011(b) which directs that: "No discovery or inspection shall be permitted which . . . (b) causes unreasonable annoyance, embarrassment, expense or oppression to the deponent or any person or party . . . ." The application of this rule to the facts disclosed by the record is clearly warranted and entirely justified.

Surely, in the setting of this case, it is far more reasonable and conducive to the orderly administration of justice to have discovery (if otherwise appropriate) conducted in the forum and under the supervision of the tribunal authorized to decide the issue sought to be established by the aid of discovery. Substantially the same assistance is available to appellant or any party in proceedings before the Commission.[13] Appellant is, therefore, not foreclosed from obtaining an adjudication of the merits of the controversy.

The lower court correctly rejected the petition for discovery.

Order affirmed.

---

[13] Public Utility Law, §1010, 66 P.S. §1400, provides: "The commission, or any commissioner, or any party to proceedings before the commission, may cause the deposition of witnesses residing within or without the Commonwealth to be taken in the manner prescribed by law for taking depositions in civil actions."