383 A.2d 791

**Allen L. FEINGOLD, Individually, and A. L. Feingold Associates, Appellants,**

v.

**BELL OF PENNSYLVANIA, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1975.

Decided Dec. 1, 1977.

Rehearing Denied April 4, 1978.

2

Allen L. Feingold, Philadelphia, for appellants.

Raymond F. Scully, William M. Hebrank, Jerome J. Shestack, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

◼◼ Appellants, Allen L. Feingold, individually and A. L. Feingold Associates, commenced an action in Equity in

the Common Pleas Court of Philadelphia County against the Bell Telephone Company of Pennsylvania, seeking, *inter alia,* injunctive relief and compensatory and punitive damages. Bell Telephone responded by filing preliminary objections to the complaint. After argument, the court dismissed the complaint with prejudice finding that the appellants had failed to exhaust their administrative remedies. Hence this appeal.[1]

In considering whether the lower court properly sustained appellee's preliminary objections, this Court must assume the truth of the factual averments in appellant's complaint, as summarized below. *Allstate v. Fioravanti,* 451 Pa. 108, 299 A.2d 585 (1973); *Eden Roc Country Club v. Mullhauser,* 416 Pa. 61, 204 A.2d 465 (1964).

On June 1, 1970, appellant moved his office from 1313 One East Penn Square to 506 East Penn Square in Philadelphia. He was given a new telephone number at that time. Since the Philadelphia directories listed his office under the old number, appellee provided a tape recorded referral giving the new number to anyone calling the original listing. The referral operated properly for about two months, at which time, appellant alleged it was disconnected by appellee, so that callers heard a ring, indicating that the telephone was functional but simply was not being answered. Appellant

---

1. Final orders of a lower court are appealable, and the test for finality is whether the order appealed from "terminate[s] the litigation between the parties or effectively deprive[s] the litigant of his day in Court." *Safety Tire Corp. v. Hoffman Tire Co.,* 458 Pa. 102, 103, 329 A.2d 834, 835 (1974); *see, James Banda, Inc. v. Virginia Manor Apts., Inc.,* 451 Pa. 408, 303 A.2d 925 (1973); *Ventura v. Skylark Motel, Inc.,* 431 Pa. 459, 246 A.2d 353 (1968). An order sustaining preliminary objections and dismissing a complaint, as in the instant case, is a final order and is, therefore, appealable. *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975); *Free v. Lebowitz,* 463 Pa. 387, 344 A.2d 886 (1975); *DeAngeli v. Fitzgerald,* 433 Pa. 529, 252 A.2d 706 (1969). The appeal in the instant case was taken pursuant to the Appellate Court Jurisdiction Act of 1970, July 31, 1970, P.L. 673, No. 223, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1977–78). Since this appeal was taken, this Court has adopted and promulgated Pennsylvania Rule of Appellate Procedure 702, thereby vesting appellate jurisdiction in cases such as this in the Superior Court.

alleged that as a result clients and colleagues were unable to reach him by telephone. The problem was allegedly aggravated when new directories were issued by appellee still containing appellant's original number while the referral recording still remained inoperative. Appellant further alleged that repeated requests and demands to appellee to correct the referral or to assign the old number to another subscriber went unheeded. Appellant alleged that as a result of this problem his business declined.

Appellant also complained that appellee disconnected his telephone service on or about March 20 and March 21, 1974, because appellant attached a privately maintained answering device to his new telephone. Telephone service was reconnected, but it is alleged that appellee still threatens discontinuance of service if the answering device is used.

Finally, appellant complains of appellee's refusal to provide him with mobile telephone service. Appellant applied to appellee for a mobile unit in 1969 and was told at that time of the existence of a waiting list of approximately two years for such service. Appellant checked on the status of the application in 1972 and was informed by appellee that the application was cancelled or destroyed because appellee was unable to contact appellant to verify the application. Appellant alleged that appellee was unable to contact them due to the difficulties with the tape-recorded referral system described above.

The question presented by this case is whether appellant, seeking both legal and equitable relief against a public utility, should have first exhausted his administrative remedies under the Public Utility Law, Act of May 28, 1937, P.L. 1053, 66 P.S. § 1101 et seq. (1959 & Supp.1977–78), before seeking a judicial remedy.[2]

2. For the purposes of this appeal, this Court may assume, without deciding, that the factual allegations in appellant's complaint would, if proven, constitute an actionable claim. Whether these allegations are legally sufficient to state a cause of action is an issue that the court below did not reach, because the court based its dismissal of appellant's complaint upon his failure to exhaust administrative remedies. The preliminary objections filed to this complaint as-

The lower court answered this question in the affirmative. For the reasons that follow, we disagree.

██ This Court has long recognized and applied the general rule requiring a petitioner to exhaust all available administrative remedies before seeking judicial redress for an alleged wrongdoing by a public utility. *See, e. g., Commonwealth v. Glen Alden Corp.,* 418 Pa. 57, 210 A.2d 256 (1965); *Collegeville Borough v. Philadelphia Suburban Water Co.,* 377 Pa. 636, 105 A.2d 722 (1954). The rationale behind this rule is clear. When the Legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency. Full utilization of the expertise derived from the development of various administrative bodies would be frustrated by indiscriminate judicial intrusions into matters within the various agencies' respective domains.[3] *See Colteryahn Sanitary Dairy v. Milk Control Commission,* 332 Pa. 15, 1 A.2d 775 (1938), *construing,* Act of March 21, 1806, P.L. 558, 46 P.S. § 156, *consolidated by,* Act of Nov. 2, 1970, P.L. 707, No. 230, 1 Pa.C.S. § 1504 (Supp.1977–78); *Commonwealth v. Glen Alden Corp., supra.*

██ As with all legal rules, the exhaustion of administrative remedies rule is neither inflexible nor absolute, and

signed only three objections: 1) exclusive jurisdiction of subject matter in the PUC; 2) exhaustion of appropriate administrative remedies; and 3) adequacy of the remedy at law.

3. One of the leading authorities on the subject of administrative law has stated the purpose of the exhaustion of remedies rule: "Administrative autonomy is desirable when administrative discretion or expertise is required." *K. Davis, Administrative Law Treatise,* § 20.01, at 642–43 (Supp.1970). This Court long ago articulated the rationale underlying the rule. In *T. Mendelson Co., Inc. v. Pennsylvania R. R. Co.,* 332 Pa. 470, 2 A.2d 820 (1938), we stated: "The technical nature of the subject, and the peculiar ability of an administrative body to examine it, suffice as a matter of public policy to displace preliminary court action." *Id.* 332 Pa. at 474, 2 A.2d at 822.

this Court has established exceptions to the rule. Thus, a court may exercise jurisdiction where the administrative remedy is inadequate. *Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974); *Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 190 A.2d 111 (1963). The mere existence of a remedy does not dispose of the question of its adequacy; the administrative remedy must be "adequate and complete." *Philadelphia Life Ins. Co. v. Commonwealth, supra* 410 Pa. at 580, 190 A.2d at 116. In the case now before us, we must determine the narrower issue of whether appellant had adequate administrative remedies available under the Public Utility Law.

The Public Utility Law placed a broad range of subject matters under the control of the Public Utility Commission (PUC), making that agency responsible for ensuring the adequacy, efficiency, safety, and reasonableness of public utility services. Act of May 28, 1937, P.L. 1053, art. IV, *as amended,* Act of October 7, 1976, P.L. 1057, No. 215, 66 P.S. § 1171 (Supp.1977–78). It can be conceded that the subject matter of appellant's complaint is encompassed by Section 401 of the Public Utility Law. The enforcement and remedial powers of the PUC, although formidable, are not those of a court. The PUC is empowered to correct, by regulation or order, abuses in the provision of service. Act of May 28, 1937, P.L. 1053, § 413, 66 P.S. § 1183 (1959). The PUC has the power to impose fines upon a public utility for violation of the Public Utility Law. Act of May 28, 1937, P.L. 1053, art. XIII, § 1301, *as amended,* Act of October 7, 1976, P.L. 1057, No. 215, § 25, 66 P.S. § 1491 (Supp.1977–78). If the PUC determines that the Public Utility Law, a regulation or order has been or is about to be violated, the PUC may petition the Court of Common Pleas of Dauphin County for appropriate judicial enforcement. Act of May 28, 1937, P.L. 1053, art. IX, § 903, *as amended,* Act of June 3, 1971, P.L. 137, No. 6, § 1, 66 P.S. § 1343 (Supp.1977–78). Alternatively, the PUC may request that the Attorney General initiate legal proceedings to obtain judicial enforcement

of the Public Utility Law or a PUC order or regulation. Act of May 28, 1937, P.L. 1053, art. IX, § 904, 66 P.S. § 1344 (1959). Since the PUC is a creature of statute, it has only those powers which are expressly conferred upon it by the Legislature and those powers which arise by necessary implication. *Allegheny County Port Authority v. Pa. P. U. C.,* 427 Pa. 562, 237 A.2d 602 (1967); *Delaware River Port Authority v. Pa. P. U. C.,* 393 Pa. 639, 145 A.2d 172 (1958).

It is relevant to the case now before us that the statutory array of PUC remedial and enforcement powers does not include the power to award damages to a private litigant for breach of contract by a public utility. Nor can we find an express grant of power from which the power to award such damages can be fairly implied. Thus, it can be concluded that the Legislature did not intend for the PUC to have such a power. This conclusion finds further support in Sections 917 and 1310 of the Public Utility Law. Section 917 states in pertinent part:

"Except as otherwise expressly provided, none of the powers or duties conferred or imposed by this act upon the commission . . . shall be construed in anywise to abridge or impair any of the obligations, duties or liabilities of any public utility . . . And except as otherwise provided, nothing in this act contained shall in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwealth, it being the intention that the provisions of this act shall be *cumulative and in addition to* such rights of action and remedies."

Act of May 28, 1937, P.L. 1053, art. IX, § 917, 66 P.S. § 1357 (1959) (emphasis added). Section 1310 contains similar language:

If any person or corporation shall do or cause to be done any act, matter, or thing prohibited or declared to be unlawful by this act, or shall refuse, neglect, or omit to do any act, matter, or thing enjoined or required to be done by this act, such person or corporation shall be liable to the person or corporation injured thereby in the full amount of damages sustained in consequence thereof:

*Provided, That the liability of public utilities, contract carriers by motor vehicles, and brokers for negligence, as heretofore established by statute or by common law, shall not be held or construed to be altered or repealed by any of the provisions of this act:* And provided further, That the recovery in this section authorized shall in no manner affect a recovery by the Commonwealth of the penalty prescribed in section one thousand three hundred one of this act [1] for such violations of this act. `

Act of May 28, 1937, P.L. 1053, art. XIII, § 1310, 66 P.S. § 1500 (1959) (emphasis added). These preservation of remedies clauses, by leaving traditional judicial remedies, such as damages in the hands of the courts, make comprehensible the Legislature's failure to grant to the PUC the power to award damages.[4] In the instant case, appellant's complaint, while seeking injunctive relief, also asks for compensatory and punitive damages in every count.[5] Although the lower court accurately noted that the Public Utility Law provides

**4.** This Court, in construing Section 917, has concluded that any administrative remedies available under the Public Utility Law are available *in addition to* common law remedies. *Emerald Coal & Coke Co. v. Equitable Gas Co.*, 378 Pa. 591, 107 A.2d 734 (1954).

**5.** Had appellant sought only equitable relief, in the form of an injunction, the lower court's dismissal would have found more support in prior case law. This Court has repeatedly declined to allow equitable relief or relief in the nature of equitable relief in disputes involving matters within the purview of the PUC. *Behrend v. Philadelphia Electric Co.*, 431 Pa. 63, 243 A.2d 346 (1968) (injunction); *Chester County v. Philadelphia Electric Company*, 420 Pa. 422, 218 A.2d 331 (1966) (injunction); *Lansdale Borough v. Philadelphia Electric Co.*, 403 Pa. 647, 170 A.2d 565 (1961) (Declaratory Judgment); *Midland Borough v. Steubenville Traction Co.*, 300 Pa. 134, 150 A. 300 (1930) (injunction); *New Brighton Borough v. New Brighton Water Co.*, 247 Pa. 232, 93 A. 327 (1915) (Mandamus). This judicial deference to the PUC in cases seeking only equitable relief is understandable. These decisions show an implicit recognition by this Court that a judicial order commanding or prohibiting certain actions constitutes a much more serious infringement upon the powers of the PUC than does an award of damages. In spite of this deference, this Court has approved grants of equitable relief in cases where the disputed issue is beyond the competence of the PUC, *Rogoff v. Buncher Co.*, 395 Pa. 477, 151 A.2d 83 (1959) (interpretation of an easement), or where equitable relief will protect the jurisdiction of the PUC. *York Water Co. v. York*, 250 Pa. 115, 95 A. 396 (1915).

that any person may complain to the PUC about the actions of a public utility, quoting the Act of May 28, 1937, *as amended*, Act of October 7, 1976, P.L. 1057, No. 215, § 19, P.L. 1053, art. X, 1001, 66 P.S. § 1391 (Supp.1977–78), a complaint by appellant to the PUC seeking damages could not have resulted in an award by the PUC even if that agency had determined the complaint to be meritorious. It is clear that the remedial and enforcement powers vested in the PUC by the Public Utility Law were designed to allow the PUC to enforce its orders and regulations but not to empower the PUC to award damages or to litigate a private action for damages on behalf of a complainant.[6] The rule requiring exhaustion of administrative remedies is not intended to set up a procedural obstacle to recovery; the rule should be applied only where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested.[7] *Philadelphia Life Insurance Co. v. Commonwealth, supra.* In the instant case,

Requiring the appellant to split his action and take his equity claim before the PUC would only manifest a slavish adherence to the presumption of PUC jurisdiction in cases seeking equitable relief. Furthermore, such a requirement would result in multiplicity of litigation before courts and administrative agencies.

6. The Pennsylvania Superior Court, in a recent case involving a claim for damages against a public utility, correctly concluded that the remedial and enforcement powers of the PUC were intended to be used to govern public utility policy and matters essential to utility service. *Behrend v. Bell Telephone Co.*, 242 Pa.Super. 47, 363 A.2d 1152 (1976), *vacated and remanded on other grounds*, 473 Pa. 320, 374 A.2d 536 (1977). In so holding, the court in *Behrend* stated:
   "The courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts."
   *Behrend v. Bell Telephone Co., supra*, 242 Pa.Super. at 59, 363 A.2d at 1158. *See Nemitz v. Bell Telephone Co.*, 225 Pa.Super. 202, 310 A.2d 376 (1973); *Kilbourne v. Denver and Ephrata T. & T. Co.*, 26 D. & C.2d 441 (C.P. Lancaster Co. 1962).

7. This Court, in *Borough of Green Tree v. Board of Property Assessments*, 459 Pa. 268, 328 A.2d 819 (1974) adopted the approach of Professor Jaffe who stated:
   "Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required."

appellant could not have been made whole by the PUC, thus the administrative remedy was not "adequate and complete." *Id.*[8]

The decree of the Common Pleas Court dismissing appellant's complaint with prejudice is reversed and vacated and

*L. Jaffe, Judicial Control of Administrative Action* 440 (1965). The appellant's complaint in the instant case merely raises the question of whether appellant's alleged damages were proximately caused by a breach of a legal duty owed appellant by appellee. This issue is of the type traditionally disposed of by courts of law, and we do not see how the "administrative expertise" of the PUC would contribute to the resolution of this issue. *See* note 3 *supra.*

Implicit in the dissenting opinions of Mr. Justice ROBERTS and Mr. Justice POMEROY is the proposition that due to the technical nature of the subject matter of contract or negligence disputes between customers and public utilities, the judiciary is somehow incompetent to resolve such disputes. Such a view ignores the reality that courts daily resolve medical malpractice and products liability disputes, as two examples, which involve equally technical and complex subject matter. Moreover, as Mr. Justice POMEROY notes, appellant could obtain appellate review by the Commonwealth Court of an adverse PUC determination. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. V, § 508, 17 P.S. § 211.508(e) (Supp.1977–78). Thus, the supposedly complex issues lurking beneath appellant's complaint may ultimately be required to be resolved by a court in any event.

Finally, it should be reiterated that appellant's claims in the lower court merely raised questions involving the contractual or tort law obligations owed by appellee to appellant. The cases relied upon by Mr. Justice POMEROY did not involve such narrow questions but rather raised issues involving the provision of utility service to an entire borough. *See Duquesne Light Co. v. Monroeville Borough,* 449 Pa. 573, 298 A.2d 252 (1972); *Lansdale Borough v. Philadelphia Electric Co., supra.* We concede that cases raising questions of the adequacy of utility service to an entire geographic area may present problems which should be addressed initially by the PUC. *See* note 6 *supra.* However, such problems are not presented in the case now before us, and those types of cases are easily distinguishable from the instant case.

8. We hold only that the *statutory* administrative remedies are inadequate. Since the lower court did not reach the question of whether appellant had adequate *nonstatutory* remedies at law, as appellee contends, this issue is open on remand. However, the availability of adequate nonstatutory legal remedies is not a jurisdictional defect. *Devlin v. Osser,* 434 Pa. 408, 411, 254 A.2d 303, 304 (1969); *Carelli v. Lyter,* 430 Pa. 543, 244 A.2d 6 (1968). Thus, if the lower court, on remand, finds that legal remedies are adequate, it should proceed in accordance with Pennsylvania Rule of Civil Procedure 1509(c). *See W. Homestead Borough Sch. Dist. v. Allegheny Co. Bd. of Sch. Dir.,* 440 Pa. 113, 117, 269 A.2d 904, 906 (1970).

the cause is remanded for further proceedings consistent herewith.

Each party to bear own costs.

JONES, former C. J., did not participate in the consideration or decision of this case.

ROBERTS and POMEROY, JJ., filed dissenting opinions.

ROBERTS, Justice, dissenting.

Appellants Allen Feingold and A. L. Feingold Associates filed a complaint in equity in the Court of Common Pleas of Philadelphia, alleging that appellee Bell of Pennsylvania: (1) wrongfully disconnected a device designed to refer persons calling appellants to appellants' correct telephone number; (2) wrongfully disconnected appellants' telephone service upon discovering appellants had attached to their telephone a privately maintained answering service; and (3) wrongfully refused to provide appellants with mobile telephone service. Appellants sought compensatory and punitive damages along with injunctive relief. The court of common pleas entered an order dismissing appellants' complaint because appellants had failed to initiate this action before the proper administrative agency, the Public Utility Commission (PUC).

The majority reverses the order of the court of common pleas. It concludes that the trial court's adherence to the doctrine requiring proceedings to begin before the relevant administrative tribunal erects an unjustifiable procedural obstacle to recovery. The majority premises its holding on the ground that this case "merely raises the question of whether appellant[s'] alleged damages were proximately caused by a breach of a legal duty owed appellant[s] by appellee." According to the majority, such issues are traditionally disposed of by courts without the aid of administrative expertise.

I do not agree. The extent of appellee's obligations regarding telephone referral devices, the maintenance of service in the face of unauthorized connections, and mobile

service are not at all obvious. The majority permits these unclear issues to be resolved in the court of common pleas. Such a result is an unwarranted departure from the sound doctrine which encourages the initial resolution of important issues to be made in the proper administrative forum. Accordingly I dissent.

The doctrine which requires proceedings involving a regulated enterprise to begin before the regulating agency promotes "proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The regulatory agency has "primary jurisdiction" over such disputes so that uniform, consistent, and expert judgments can be rendered on specific issues. Davis, Administrative Law Treatise § 20.01 (Supp.1977). Such a tribunal, "by specialization, by insight gained through experience and by more flexible procedure," is better equipped than a court to make these judgments. *Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). So that the administrative agency can discharge its responsibility, courts limit their involvement in the resolution of this class of disputes. See *Texas & Pacific Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); Schwartz, Administrative Law § 166 (1976).

These considerations apply with full force to cases falling within the regulatory domain of the PUC. In *Behrend v. Bell Telephone Co. of Pennsylvania*, 431 Pa. 63, 243 A.2d 346 (1968), a telephone subscriber sought to compel the publication of corrected telephone directories. We concluded that the proceeding should have been brought before the PUC:

"The Public Utility Commission has been vested by the Legislature with exclusive original jurisdiction over the reasonableness, adequacy and sufficiency of public utility services, including telephone services and directories.

In *Lansdale Borough v. Philadelphia Electric Company*, 403 Pa. 647, pages 650–651, 170 A.2d 565, page 566, the Court pertinently said (page 650): 'Although we still

possess the right of judicial scrutiny over the acts of the PUC, no principle has become more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts.' "

431 Pa. at 66–67, 243 A.2d at 347–48 (footnote deleted). Accord, *Duquesne Light Co. v. Borough of Monroeville*, 449 Pa. 573, 298 A.2d 252 (1972); *Einhorn v. Philadelphia Electric Co.*, 410 Pa. 630, 190 A.2d 569 (1963).

The precise obligations of appellee in this case must be viewed in connection with appellee's duty to customers generally. This cannot be accomplished by interpreting statutory provisions. Many factors, all of which may have important effects on the public, the regulated enterprise, and those situated similarly to the person aggrieved, must be considered. Extending the obligations of a telephone company to encompass these circumstances may pose economic hardship or create a conflict in duties which cannot be detected by a court. A court's formalized proceedings may inhibit the discovery of information relevant to the technological capability of appellee to provide such services. Important facts can easily be overlooked because of a court's unfamiliarity with their significance. Because of their shortcomings, courts are relieved of such matters by the PUC.

By requiring the trial court to proceed to the merits of this case, the majority encourages the court to engage in exactly the kind of speculation the doctrine of primary jurisdiction was designed to eliminate. Moreover, the decision invites other persons similarly situated to submit to courts throughout the Commonwealth their grievances against appellee. These courts will have to render equally speculative judgments and will inevitably reach conflicting results. The orderly coordination of administrative adjudication will quickly be replaced by unneeded regulatory chaos.

The majority justifies its decision to depart from the recognized doctrine of primary jurisdiction on the ground that the PUC provides appellants an insufficient remedy. The majority reasons that the interest in judicial economy is furthered by allowing a tribunal with full remedial powers to consider the dispute. What the majority ignores, however, is that the latter tribunal is not equipped to resolve the underlying issues in this controversy. Judicial economy, if any, comes only by paying the great price of having these regulatory issues decided in a haphazard, ad hoc, and inconsistent manner.

Whether a party asks for a remedy beyond the power of the relevant administrative agency does not control the question whether that agency has primary jurisdiction. Rather, that question is controlled by whether the administrative agency can clarify issues in dispute. Here, the PUC has knowledge, procedures, and experience which can enhance the resolution of appellee's duties. I believe that the trial court correctly recognized the need for the PUC's initial adjudication of the issues in this case.

I therefore dissent, and would affirm the order.

Mr. Justice ROBERTS also dissents from the order of the Court denying reargument. He would grant reargument for the reasons set forth in his dissenting opinion and the reasons urged in the Applications for Reargument filed by party-applicant Bell of Pennsylvania and *amicus*-applicants Public Utility Commission, Pennsylvania Electric Association, Pennsylvania Gas Association, Pennsylvania Independent Telephone Association, and Pennsylvania Power and Light Company.

POMEROY, Justice, dissenting.

I am convinced that the doctrine of primary administrative jurisdiction dictates that the Public Utility Commission (PUC) is best equipped to resolve initially such technical issues of administrative law as are here presented involving, as they do, the relationship of the public with the public utility companies. Thus I share in general the views ex-

pressed in the dissenting opinion of Mr. Justice ROBERTS. Our prior cases have not had occasion, however, to delineate with much precision the respective roles of administrative tribunals and the courts where, as here, multiple issues are presented, not all of which fall neatly within the primary jurisdiction of either an administrative agency or a court of law. I therefore add this separate statement as to my reasons for dissenting.

Allen Feingold and A. L. Feingold Associates filed a complaint in equity in the Court of Common Pleas of Philadelphia County seeking both injunctive relief and compensatory and punitive damages. No attempt to seek relief from the Public Utility Commission had been made. Applying the doctrine of primary administrative jurisdiction, the trial court dismissed the entire complaint with prejudice. This Court now reverses that determination and replaces total jurisdiction in the court of common pleas on the ground that the administrative remedy was not "adequate and complete." See *Philadelphia Insurance Co. v. Commonwealth*, 410 Pa. 571, 190 A.2d 111 (1963). I believe the proper response lies somewhere between the placement of this case exclusively in the domain either of the Commission or of the court. The functional division herein outlined would, I believe, be the proper application of the doctrine of primary administrative jurisdiction which, instead of creating mutually exclusive domains, would result in a workable relationship between the courts and the PUC.

It has long been recognized in Pennsylvania that the PUC is the body with "exclusive original jurisdiction over the reasonableness, adequacy and sufficiency of public utility services, including telephone services and directories." *Behrend v. Bell Telephone Company of Pennsylvania*, 431 Pa. 63, 66, 243 A.2d 346, 347 (1968). See also *Duquesne Light Company v. Borough of Monroeville*, 449 Pa. 573, 298 A.2d 252 (1972); *Einhorn v. Philadelphia Electric Company*, 410 Pa. 630, 190 A.2d 569 (1963); *Lansdale Borough v. Philadelphia Electric Company*, 403 Pa. 647, 170 A.2d 565 (1961). It is also true, as Mr. Justice NIX notes for the majority, that

the doctrine of exclusive jurisdiction in the administrative tribunal will yield where the administrative remedy is inadequate. See *Borough of Greentree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974); *Philadelphia Life Insurance Co. v. Commonwealth, supra.* I cannot agree, however, that such a yielding is indicated where, as here, there is but a mere allegation of extra-statutory relief, and the granting of that relief is dependent upon a determination of issues which would normally fall within the exclusive jurisdiction of the PUC.[1]

In the present case, appellant requests mandatory injunctive relief to compel the defendant to render legally adequate telephone service together with damages for failure to render adequate service in the past. Both types of relief are dependent upon a finding that service has been inadequate. A determination of whether the service and facilities rendered by a public utility is adequate, efficient, safe and reasonable is obviously within the competence of the Public

1. As I read the cases upon which the majority principally relies, *Philadelphia Life Insurance Company v. Commonwealth,* 410 Pa. 571, 190 A.2d 111 (1963) and *Greentree Borough v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974), they do not support the holding that administrative jurisdiction must yield in the instant case. Both of those cases involved challenges to the constitutionality of the statute which the agency was enforcing. In neither case was there any doubt that the particular agency had initial jurisdiction over the controversy (i. e., in each case, the validity of a tax assessment). It was however, clear that the tribunals were without authority to pass upon the constitutionality of the legislation and as such could not provide the relief appellants sought.

What was at issue, then, was not the doctrine of primary jurisdiction, but rather a corollary doctrine, that of exhaustion of remedies. Once jurisdiction is properly found to be with an agency, the exhaustion doctrine dictates that the administrative process be completed before resort may be had to the courts. *Philadelphia Life Insurance Co.* and *Greentree Borough* stand for the proposition that it is unnecessary to exhaust administrative remedies where it is clear that the administrative process cannot serve to resolve the issues in question. *See* Jaffe, Judicial Control of Administrative Action, p. 440 (1965). In contrast, the present dispute involves three claims, two of which are for injunctive relief of a nature expressly reserved to the PUC and the third of which (for damages) is dependent upon a determination of the reasonableness of service—a function for which the PUC was created. *See* discussion *infra.* Thus, the PUC is best suited to resolve the underlying dispute.

18

Utility Commission; the making of such determinations is, indeed, one of the primary reasons for which the PUC was created. Act of May 28, 1937, P.L. 1053, art. IV, as amended, Act of October 7, 1976, P.L. 1057, No. 215, 66 P.S. § 1171 (Supp.1977–1978). And, of course, the PUC is endowed by the Public Utility Code with authority to enforce compliance by public utility companies with the standards of service to which legally the companies must adhere. *See* Act of May 28, 1937, P.L. 1053, art. IX, § 901, 66 P.S. § 1341 *et seq.* The PUC, accordingly, is the agency which the legislature has created both to interpret the standards of service of a public utility and to enforce them. The only power which the Commission lacks in the present case is the ability to award damages for past breaches of duty by the Telephone Company, assuming such breaches have occurred and entail damages. This lack, however, is not such as to oust the PUC of its primary jurisdiction. Resort to the courts may well be necessary at a later stage to pursue the quest for damages, based on PUC findings which will then be in hand. The majority, however, would virtually strip the PUC of all jurisdiction merely because a demand for damages is contained in appellant's complaint. Such a result is unwarranted.

The proper procedure in a case such as the instant one is, I suggest, to stay the proceeding in the court of common pleas until a determination of the questioned standards of service can be had by the PUC in accordance with Section 412 of the Public Utility Code (66 P.S. § 1182).[2] This course of proce-

2. The continuance of an action in the court of common pleas pending resolution of an underlying issue by the PUC is not novel in the area of public utility law. In *Lansdale Borough v. Philadelphia Electric Company,* 403 Pa. 647, 170 A.2d 565 (1961), the appellant borough sought an order of court requiring appellee electric company to terminate service to an area which the borough had recently annexed and to which area the borough had, pursuant to the Borough Code (53 P.S. § 47470), the exclusive right to supply electricity. This Court held that a determination of whether the appellee *must* discontinue service was dependent on an initial determination by the PUC that the appellee was permitted to terminate service. Thus, although the authority to decree termination of service lay only in the courts, the function of preliminary ascertainment of the effect of such

dure is necessary because the dispute is uniquely within the expertise of the PUC; it is only the relief sought, i. e., the allowance of damages, which is beyond the legislative grant of powers to the Commission. The proposition is succinctly put in Professor Davis' authoritative treatment of administrative law:

"(1) On the question whether the doctrine [of primary administrative jurisdiction] applies to problems or relief which are beyond administrative jurisdiction, the theory seems reasonably clear. The test is not whether some parts of the case are within the exclusive jurisdiction of the courts; the test is whether some parts of the case are within the exclusive jurisdiction of the agency. Because of the purpose of the doctrine—to assure that the agency will not be by-passed on what is especially committed to it—and because resort to the courts is still open after the agency has acted, *the doctrine applies even if the agency has no jurisdiction to grant the relief sought.*" (Emphasis added.)

termination of service, i. e., whether it would adversely affect the area, reposed in the PUC. See also *Duquesne Light Company v. Borough of Monroeville,* 449 Pa. 573, 298 A.2d 252 (1972). As we stated in *Lilian v. Commonwealth,* 467 Pa. 15, 19, 354 A.2d 250 (1976) (quoting *West Homestead Borough School District v. Allegheny County Board of School Directors,* 440 Pa. 113, 118, 269 A.2d 904, 907 (1970)):

" 'For more than 150 years, it has been the rule in Pennsylvania that: "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect." Act of 1806, March 21, P.L. 58, 4 Sm.L. 326 § 13; 46 P.S. § 156. See *Calabrese v. Collier Twp. Mun. Auth.,* 430 Pa. 289, 294–95, 240 A.2d 544, 547 (1968).

" 'This statute says in unambiguous language that, if the legislature provides a specific, *exclusive,* constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought in any "side" of the Common Pleas to adjudicate the dispute by any kind of "common law" form of action other than the exclusive statutory method. This excludes an action for injunction, or other equitable form of relief, unless the statute provides for it or unless there is some irreparable harm that will follow if the statutory procedure is followed.' "

Davis, Administrative Law Treatise, § 19.07, p. 39 (1958). See also Davis, Administrative Law of the Seventies, § 19.07, pp. 444–45 (1976); Annotation, Doctrine of Primary Administrative Jurisdiction as Defined and Applied by the Supreme Court, 38 L.Ed.2d 796, § 8 (1974); Jaffe, Judicial Control of Administrative Action, pp. 138–39 (1965). Accord: *United States v. Michigan National Corp.*, 419 U.S. 1, 5, 95 S.Ct. 10, 12, 42 L.Ed.2d 1, 5 (1974); *Pan American World Airways, Inc. v. United States*, 371 U.S. 296, 313, n. 19, 83 S.Ct. 476, 486 n. 19, 9 L.Ed.2d 325, 337, n. 19 (1963); *Hewitt-Robins v. Eastern Freight-Ways, Inc.*, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1963);[3] *Elkins v. Bell Telephone Co.*, 247 Pa.Super. 505, 372 A.2d 1203 (1977). The position endorsed by the majority will, I fear, inevitably lead to varying and contradictory interpretations of obligations or standards of service which would not be applied uniformly or consistently throughout the regulated field. Such a result would frustrate one of the legislative purposes in creating the Public Utility Commission.[4] The need for uniformity and consistency is a major objective of the primary

3. In its *Hewitt-Robins* opinion, the Supreme Court of the United States noted:

"Indeed, the doctrine of primary jurisdiction is designed to apply 'where a claim is originally cognizable in the courts, and . . . enforcement of the claim requires the resolution of issues . . . placed within the special competence of an administrative body . . . .' *United States v. Western Pacific R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126, 132 (1956); see Davis, Administrative Law Treatise, § 19.01 (1958). The practice of the [Interstate Commerce] Commission in making such determination in the first instance, even though it has no power to award reparations in a given case, has long been exercised, *Bell Potato Chip Co. v. Aberdeen Truck Line*, 43 MCC 337, 343 (1944), and is supported by a long line of cases. See *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946), and cases there cited." 371 U.S. at 88–89, 83 S.Ct. at 160, 9 L.Ed.2d at 146.

4. We have stated that purpose to be "*standardizing* the construction, operations and services of public utility companies throughout Pennsylvania." (Emphasis added.) See *Duquesne Light Company v. Borough of Monroeville*, 449 Pa. 573, 298 A.2d 252 (1972); *Chester County v. Philadelphia Electric Co.*, 420 Pa. 422, 218 A.2d 331 (1966); *Duquesne Light Company v. Upper St. Clair*, 377 Pa. 323, 105 A.2d 287 (1954).

jurisdiction concept, as the Supreme Court of the United States recently observed in *Nader v. Allegheny Airlines,* 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643, 655 (1976):

> "Even when common-law rights and remedies survive and the agency in question lacks the power to confer immunity from common-law liability, it may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure '[u]niformity and consistency in the regulation of business entrusted to a particular agency' or where
>
>> 'the limited functions of review by the judiciary [would be] more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.' *Far East Conference v. United States,* 342 U.S. at 570, 574–575, 72 S.Ct. 492, 96 L.Ed. 576.
>
> See also *United States v. Western Pacific R. Co.,* supra, 352 U.S. 59 at 64, 77 S.Ct. 161, 1 L.Ed.2d 126.
>
> "The doctrine [of primary jurisdiction] has been applied, for example, when an action otherwise within the jurisdiction of the court raises a question of the validity of a rate or practice included in a tariff filed with an agency, e. g., *Danna v. Air France,* 463 F.2d 407 (CA 2 1972); *Southwestern Sugar & Molasses Co. v. River Terminals Corp.,* 360 U.S. 411, 417–418, 79 S.Ct. 1210, 1214–1215, 3 L.Ed.2d 1334, 1340–1341 (1959), particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency—such as matters turning on an assessment of industry conditions, e. g., *United States v. Western Pacific R. Co.,* supra, 352 U.S. at 66–67, 77 S.Ct. 161, 1 L.Ed.2d 126."

Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil

litigation may continue. The direction and scope of the litigation will of course be guided and determined by the nature of the agency adjudication.[5]

I do not believe that such a disposition of the present case or of similar cases creates any undue hardship on any of the parties, nor do I agree with the Court that such an initial resolution at the administrative level sets up "a procedural obstacle to recovery." Rather, the present case presents a classic illustration of an instance where a balancing of the roles of the courts and administrative tribunals is necessary to insure fairness to the parties while effectuating the public concern that utility companies be regulated in an efficient and consistent manner.

I would vacate the order of the trial court and stay further action on the complaint until such time as the PUC has had an opportunity to rule on the adequacy of service which serves as the basis of the present action. Hence, this dissent.

---

5. It may be worth noting, however, that should the claimant seek review of the PUC determination, his right to do so would not be affected by the procedure here advocated. *See* Section 508(e) of the Appellate Court Jurisdiction Act of 1970, July 31, P.L. 673, No. 223 (17 P.S. § 211.508(e)) which transferred to and vested in the Commonwealth Court all appeals from the PUC which were originally vested in the Superior Court pursuant to §§ 1101–1106 of the Public Utility Code, 66 P.S. §§ 1431–1437. Thus review of the PUC action should proceed through the normally existing route of review (see *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973)). The pending action in the court of common pleas will not, of course, be used to relitigate the question of adequacy of services, but only to litigate such questions as were not resolved through administrative channels and to grant such relief, if any, including damages, as may be appropriate in light of the administrative determination.