**Josette JOHNSON**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and David Levine.**

**No. CIV. A. 98–6538.**

United States District Court, E.D. Pennsylvania.

Feb. 14, 2000.

Charles S. Cooper, Law Offices of Charles S. Cooper, Bala Cynwyd, PA, for Josette Johnson.

Nicholas J. Staffieri, SEPTA Legal Division, Philadelphia, PA, Saul H. Krenzel, Saul H. Krenzel & Associates, Philadelphia, PA, Lori Kliner-Krenzel, Saul H. Krenzel & Associates, Philadelphia, PA, for Southeastern Pennsylvania Transp. Authority.

Saul H. Krenzel, Saul H. Krenzel & Associates, Philadelphia, PA, for Richard Evans, John K. Leary, Jr., John Doe.

Jeffrey T. Grossman, Kurtz & Revness, P.C., Wayne, PA, for David Levine.

## OPINION

POLLAK, District Judge.

Ms. Johnson's amended complaint in this suit alleges that Mr. Levine, who was at that time a police officer for the Southeastern Pennsylvanian Transportation Authority (SEPTA), verbally and physically abused Ms. Johnson as she waited on the steps of a SEPTA Information Booth for her bus to arrive at 6:45 a.m. Mr. Levine allegedly handcuffed Ms. Johnson and drove her to the station for the 35th Police District. There, she was processed, detained for several hours, and transferred to Philadelphia Police Headquarters for overnight detention. Ms. Johnson claims that Mr. Levine's actions were motivated by race and sex; thus, she seeks damages from SEPTA—under 42 U.S.C. §§ 1981, 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43 §§ 951–963 ("PHRA")—for failing adequately to train and supervise Mr. Levine, and from Mr. Levine under these same statutes and the common law of assault.

This opinion concerns two motions to dismiss the PHRA counts of Ms. Johnson's complaint, pursuant to which she asserts a right "to obtain all the accommodations, advantages, facilities and privileges" of SEPTA's public transportation facilities without discrimination on the basis of her race or sex. Pa. Stat. Ann. tit. 43 §§ 953, 954(*l*). One of the motions to dismiss at issue was filed by SEPTA, (docket # 8); the other, which merely incorporates SEPTA's arguments by reference, was filed by Mr. Levine (docket # 11). Defendants contend that Ms. Johnson cannot pursue her PHRA claims in this court both because she failed to exhaust her administrative remedies available from the Pennsylvania Human Relations Commission ("PHRC") and because the PHRA does not cover the type of injury that she allegedly suffered.

### A. Exhaustion under the PHRA

Defendants assert that this court cannot hear Ms. Johnson's PHRA claim because she failed to exhaust her state administrative remedies; in particular, she did not file a complaint with the Pennsylvania Human Rights Commission ("PHRC"). To prove that such administrative exhaustion is required, defendants rely on Pa. Stat. Ann. tit. 43, §§ 955(h) and 955(j), which specify the PHRC's filing deadlines,[1] and

---

1. Pa. Stat. Ann. tit. 43, § 955(h) ("Any complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination, unless otherwise required by the Fair Housing Act."); Pa. Stat. Ann. tit. 43, § 955(j) ("At any time after the filing of a complaint, the Commission shall dismiss with prejudice a complaint which, in its opinion, is untimely with no grounds for equitable tolling, outside its jurisdiction, or frivolous on its face.").

on Pa. Stat. Ann. tit. 43 § 962(c)(1), which grants courts authority to review PHRC dismissals or non-decisions with respect to complaints that are properly placed before it:

> In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of the complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.

None of these statutory conditions is satisfied here because Ms. Johnson did not even file a complaint with the Commission.

Defendants further support their exhaustion argument with numerous federal and state cases, each of which denies relief to plaintiffs who failed to file timely complaints with the PHRC. *See, e.g., Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917, 919–20 (1989). According to defendants, these judicial declarations of PHRC exhaustion's general necessity control our decision in this case.

### B. Feingold's Exhaustion "Exception"

In opposition to these arguments, Ms. Johnson marshals precedents that have excused plaintiffs from their duty to exhaust where such proceedings would be futile or the agency is powerless to provide ade-

quate relief. *Feingold v. Bell,* 477 Pa. 1, 383 A.2d 791, 793–94 (1977), is a representative, if somewhat antique, example of such cases.[2] The *Feingold* plaintiffs were allowed to seek relief in the Court of Common Pleas with respect to a telephone company's misconduct despite their not having exhausted available remedies with the Public Utility Commission ("PUC"). Specifically, the plaintiffs filed a suit in equity requesting both damages and injunctive relief, and a majority of the Pennsylvania Supreme Court held in their favor because the PUC could not provide the requested monetary relief:

> As with all legal rules, the exhaustion of administrative remedies rule is neither inflexible nor absolute, and this Court has established exceptions to the rule. Thus, a court may exercise jurisdiction where the administrative remedy is inadequate. The mere existence of a remedy does not dispose of the question of its adequacy; the administrative remedy must be "adequate and complete." . . .
>
> In the instant case, appellant could not have been made whole by the PUC, thus the administrative remedy was not "adequate and complete."

*Feingold,* 383 A.2d at 793–94, 796 (citations omitted).

In the case at bar, Ms. Johnson's complaint requests compensatory damages for "severe emotional distress and humiliation" (Complaint ¶¶ 37,56), and she asserts that the PHRC has no general authority to grant such relief; the PHRA authorizes the Commission to:

> take such affirmative action, including, but not limited to, reimbursement of certifiable travel expenses[,] . . . com-

2. *See also Empire Sanitary Landfill, Inc. v. Commonwealth,* 546 Pa. 315, 684 A.2d 1047, 1054–55 (1996) (excusing a plaintiff's decision not to complain to the Pennsylvania Environmental Hearing Board because that agency lacks the power to grant declaratory judgments and injunctive relief); *Frye Construction v. City of Monongahela,* 526 Pa. 170, 584 A.2d 946, 948–49 (1991) (excusing non-exhaustion with respect to municipal zoning authorities because such agents cannot issue injunctions requiring that noncompliant fixtures be removed); *Ohio Cas. Group of Ins. v. Argonaut Ins. Co.,* 514 Pa. 430, 525 A.2d 1195, 1198 (1987) (rejecting exhaustion arguments regarding the Medical Professional Liability Catastrophe Fund because the fund lacks serviceable procedures for providing successful complainants with restitution).

pensation for loss of work[,] . . . hiring, reinstatement or upgrading of employes, with or without back pay, admission or restoration to membership in any respondent labor organization . . . and any other verifiable, reasonable out-of-pocket expenses caused by such unlawful discriminatory practice, provided that, in those cases alleging a violation of section 5(d) [which concerns retaliation claims], (e) [coercion claims] (h) or 5.3 [housing claims] when the underlying complaint is a violation of section 5(h) or 5.3, the Commission may award actual damages, including humiliation and embarrassment, as, in the judgment of the Commission, will effectuate the purposes of this act . . . .

Pa. Stat. Ann. tit. 43 § 959(f)(1); *see also Pennsylvania Human Relations Comm'n v. Zamantakis*, 478 Pa. 454, 387 A.2d 70, 72–73 (1978) (plurality) (holding that the PHRC lacks authority to grant damages for mental anguish and humiliation). Ms. Johnson claims that, since the Commission could not possibly have provided her desired remedy, filing an administrative complaint with the PHRC before pursuing judicial relief would have been useless and was, therefore, unnecessary.[3]

The problem with Ms. Johnson's argument is that it confuses two very different senses of the term "exhaustion." Throughout the *Feingold* line, courts have considered the rule, of judicial creation, that courts should abstain from deciding legal issues that would be more wisely left to specialized administrative agencies. *See e.g., Empire Sanitary Landfill, Inc.*, 684 A.2d at 1053 ("The doctrine of exhaustion . . . is a court-made rule intended to prevent premature judicial intervention into the administrative process."). Pennsylvania courts have sensibly abridged their own exhaustion rule in cases where some legally independent claim—such as the *Feingold* plaintiffs' equity claim or the *Empire* plaintiffs' constitutional claim—cannot be remedied by the agency to whose proceedings courts would ordinarily defer.

The sense in which defendants use the word "exhaustion," however, is purely statutory. They claim that the terms of the PHRA bars Ms. Johnson's judicial cause of action, and if their interpretation of the statute is right, the common law doctrine of futility is not an adequate response. None of the cases in the *Feingold* line considered claims that were statutorily required to be presented to an administrative agency, and all of them concerned efforts to vindicate a right that was legally independent of the agency whose jurisdiction that the plaintiffs sought to escape. Here, in contrast, Ms. Johnson asserts a right under the very same statute that imposes the PHRC filing requirement. Thus, whether or not Ms. Johnson's claim survives her failure to file with the Commission must be decided—not by judicially-created doctrines of exhaustion and futility—but by the terms, rights, and restrictions contained within the PHRA itself. We now turn to the relevant statutory provisions directly.

## C. Ms. Johnson's Rights and Remedies under the PHRA

To restate Ms. Johnson's position in purely statutory terms, she first asserts that the PHRA entitles her to a compensatory damages action against SEPTA and Mr. Levine. She also argues that, unlike other PHRA plaintiffs, anyone who seeks compensatory damages beyond the scope

---

3. Ms. Johnson admits that these futility arguments have never been applied to the PHRA; indeed, such notions are remarkably absent from the numerous cases cited in SEPTA's brief. But she explains this fact as owing to the act's remedial structure, not to the doctrine's inapplicability. As the above quoted portion of § 959(f)(1) shows, the PHRC has broad discretion to grant compensatory relief in disputes that involve employers and employees. Thus, Ms. Johnson contends that none of the exhaustion cases cited in defendants' brief—virtually all of which involve disputes between employers and employees, where the PHRC's statutory power is strongest—could have properly considered the adequacy of the PHRC's available remedies.

of the PHRC's authority does not need to file an administrative complaint before seeking judicial relief. With respect to this first assertion, the parties have not offered, and we have not discovered, any federal or Pennsylvania case that has considered the propriety of PHRA suits for compensatory damages outside the context of employment, housing, coercion, and retaliation claims. Without such guidance, we will not address this difficult state law question in deciding the motions at bar. Instead, we simply hold that, even assuming such suits' existence, Pennsylvania law requires that they be brought before the PHRC before any court may properly enforce them.[4]

Ms. Johnson attempts to justify her immediate pursuit of judicial relief by emphasizing the gap between courts' remedial powers under the PHRA and those possessed by the PHRC. She claims that Pa. Stat. Ann. tit. 43 § 959(f), *supra*, and the *Zamantakis* case prove that the PHRC lacks general authority to grant compensatory damages except with respect to employment, retaliation, coercion, and housing claims. Courts, on the other hand, are authorized under Pa. Stat. Ann. tit. 43 § 962(c)(3) to "order affirmative action, which may include, but is not limited to, reinstatement or hiring of employes, granting back pay, or any other *legal or equitable relief* as the court deems appropriate" (emphasis added). Furthermore, the clause "legal and equitable relief" has been interpreted, at least by federal courts, to include a general power for courts to award compensatory damages. *See, e.g., Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 486 (3d Cir.1997)

(recognizing courts' exclusive authority under the PHRA to award damages for mental anguish and humiliation); *cf. Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 749, 751 (1998) ("Central to the Act is the mission to make persons whole for injuries suffered as a result of discrimination.... The courts have broad authority to fashion remedies without resort to punitive damages.").

Because compensatory damages are only available in courts, Ms. Johnson questions, as a policy matter, whether the PHRA can possibly be read to require her to spending time and energy filing with the PHRC, even if that agency cannot grant the relief she desires. We believe it can and it does. As Pennsylvania's courts have explained, the purpose of mandatory administrative complaints is not to rest on plaintiffs' ex ante preferences:

"The legislative history of section 962(c) shows that the Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRA for a period of one year in order to conduct an investigation of the charges and, if possible, conciliate the matter. 1974 Pa. Legis. J. 6396–98. The reasons the Legislature chose thus to postpone a complainant's right to seek redress by an action in court are clear. The PHRC possesses a 'particular expertise' in the area of unlawful discrimination not possessed by the courts. by requiring a complainant first to repair to the PHRC, the Legislature ensured maximum use of the PHRC's expertise, thereby minimizing the inefficient use of judicial resources (and its

---

4. As a preliminary matter, we note that Ms. Johnson's claim is based on her alleged right "to obtain all the accommodations, advantages, facilities, and privileges" of SEPTA bus transportation without suffering discrimination based on race or sex. Pa. Stat. Ann. tit. 43 §§ 953, 954(*l*). Defendants' arguments on the merits of this claim—that she was only delayed, not denied, access to public benefits, and that she only suffered one deprivation of her statutory rights—are facially unpersuasive. It is impossible to believe that, on the morning that Mr. Levine allegedly took her into custody, Ms. Johnson was only "delayed" access to bus transportation. And, crediting Ms. Johnson's claim that this detention was based on sex or race, this single deprivation seems entirely adequate to support her statutory claim at the motion to dismiss stage. Defendants have not cited, and we are unaware of, any requirement that plaintiffs prove a repeated custom or practice of discrimination to state a valid claim under the PHRA.

attendant expense and embarrassment of the parties)."

*Clay,* 559 A.2d at 920 (quoting *Lukus v. Westinghouse Elec. Corp.,* 276 Pa.Super. 232, 419 A.2d 431, 455 (1980)). Although one cannot be sure whether PHRC investigation and conciliation efforts would have helped resolve this case, it does seem unlikely that such proceedings would often help plaintiffs in need of "legal and equitable relief," which has been exclusively reserved for court enforcement. Such problems are implicit, however, in any system of review that grants appellate decisionmakers greater remedial power than those of the first instance. The fact that Pennsylvania has apparently chosen just such a top-heavy system for implementing the PHRA does not justify plaintiffs like Ms. Johnson in trying to circumvent the first stage in the process and seek relief at the second.

Turning to the statutory text, Ms. Johnson has not indicated, and we have not found, any PHRA provision that authorizes unmediated judicial enforcement in her, or indeed any, PHRA case. Pa. Stat. Ann. tit. 43 § 962(c)(1), quoted *supra,* explicitly conditions judicial action on the plaintiff's filing with the PHRC. Although that section provides that "a complainant's right of action in the courts of the Commonwealth shall not be foreclosed" if she "invokes the procedures set forth in this act"—meaning the process for PHRC complaints—there is no provision in any part of the statute for court intervention if a plaintiff fails to follow such procedures. Even Pa. Stat. Ann. tit. 43 § 953, which describes the individual rights that the PHRA is designed to protect, carefully specifies that the civil right to be created "shall be enforceable as set forth in this act"—again referring to the rules in § 962(c)(1) governing PHRC complaints. Ms. Johnson's argument that courts may grant "legal and equitable relief" with respect to claims that are properly raised under § 962(c)(1) does not appear to justify allowing such relief for claims that are not so raised.

This court is also disinclined to imply a judicial remedy under the PHRA where the statute itself has not authorized one. While the Pennsylvania Supreme Court's recent *Hoy* decision generally cautions against courts' serving as a "super legislature" with respect to the PHRA, 720 A.2d at 751, Pennsylvania's case law also details peculiar problems regarding implied judicial remedies in the PHRA context.

In particular, the *Clay* case held that procedures provided by the PHRA had displaced common law causes of action for wrongful discharge. The Court relied on the text of Pa. Stat. Ann. § 953, as discussed above, but it rested primarily on its declaration that the PHRA was intended to make the Commission, rather the courts, the principal decisionmakers with respect to all discrimination claims within its jurisdiction. 559 A.2d at 919–20; *see also e.g., Commonwealth v. Feeser,* 469 Pa. 173, 364 A.2d 1324, 1326 (1976) ("The Legislature has chosen, in the PHRA, to charge an administrative agency with the jurisdiction initially to receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination."). *Clay* held that allowing courts to decide frustrated employees' cases would undermine the statutory scheme, resulting "in the very sort of burdensome, inefficient, time consuming, and expensive litigation that the PHRC was designed to avert, and would substantially undermine the proper role of the PHRC." 559 A.2d at 920.

In light of the foregoing analysis, we predict that the Pennsylvania Supreme Court would not treat frustrated clients of public transportation like Ms. Johnson more favorably than it treats frustrated employees, whose claims (for injunctive or monetary relief) must always be brought to the PHRC. Thus, even if Ms. Johnson does have a right under the PHRA to seek compensatory damages for discrimination in public transportation, she cannot pursue such a claim in any court without first filing a complaint with the PHRC.

Since Ms. Johnson has failed to so file, defendants' motions to dismiss the PHRA

counts of Ms. Johnson's complaint (Count III and Count VI) shall be granted.